**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GLOBE MANUFACTURING COMPANY, Respondent.**

No. 77–1452.

United States Court of Appeals, First Circuit.

Argued April 5, 1978.

Decided July 26, 1978.

W. Christian Schumann, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John H. Ferguson, Atty., Washington, D. C., were on brief, for petitioner.

Patrick A. Liguori, Providence, R. I., with whom Adler, Pollock & Sheehan, Inc., Providence, R. I., was on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This enforcement proceeding brought by the National Labor Relations Board comes back to us after the Board, following remand, has found once more that Globe Manufacturing Co. violated sections 8(a)(1) and (4) of the National Labor Relations Act (the Act),[1] 29 U.S.C. §§ 158(a)(1), (4), and must reinstate its injured employee, McCarthy, with back pay.[2]

In our earlier decision, *NLRB v. Globe Mfg. Co.*, 544 F.2d 1118 (1 Cir. 1976), we declined to enforce the Board's order because the order purportedly rested on testimony that the Board elsewhere said it was not crediting. We stated, however, that a proper consideration of the credited testimony might permit the Board to find Globe in violation of the Act and to grant relief. 544 F.2d at 1120–21. The Board has now done so.

We need not restate the facts set forth in our earlier opinion. 544 F.2d at 1119–20. The Board has presently concluded that on March 15, 1974, Romanowicz declined to discuss McCarthy's work status because of the then pending unfair labor practice charge made on McCarthy's behalf. It reached this result on the basis of Romanowicz' testimony that he had told McCar-

thy he would not discuss the former's work status upon advice of counsel because the charge was under investigation and discussion would be "inappropriate." While Romanowicz also reassured McCarthy that he was not fired or terminated, and remained a Globe employee, the Board ruled that an unwillingness to consider McCarthy's reinstatement because a charge was pending constituted "discrimination against an employee," within the meaning of § 8(a)(4), occurring because the employee had "filed charges . . . under this subchapter."

Globe's arguments before us are both factual and legal.

Factually Globe faults the Board for believing that McCarthy had "fulfilled the condition imposed by Romanowicz on January 3, 1974," *i. e.* that Dr. Quigley's slip was sufficient. It argues that McCarthy was merely seeking unemployment benefits, not reinstatement, and that Romanowicz at most declined to discuss McCarthy's work status "at that time" while the charge was "under investigation," rather than entirely foreclosing discussion because of the pendency of the charge. Finally, Globe insists that its later reiteration of unwillingness to accept McCarthy because of his physical condition confirms that its refusal to discuss his status on March 15 was unrelated to the pending charge. We find little merit in these contentions. Romanowicz' testimony adequately supports the Board's position. Romanowicz did not reject Dr. Quigley's slip as medically insufficient—he refused to discuss it at all. He did not indicate that his unwillingness to deal with McCarthy would end as soon as an "investigation" was complete. He did not state that a reply would shortly be forthcoming, as he could have done had he simply wished to check with Globe's counsel before committing the Company. While there was certainly much

---

1. Sections 8(a)(1) and (4) provide:
   "It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
   . . . . .

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter."

2. The Board's supplemental decision and order appear at 229 N.L.R.B. No. 147.

evidence that McCarthy was physically disabled, we cannot say that the Board was bound to reject Romanowicz' testimony as to the actual reasons given—especially where the only other version, McCarthy's, was even more damaging to the Company.

■ Nor can we agree that the Board committed legal error in not recognizing a right on Globe's part to refuse to talk to McCarthy on the ground that the charge was pending. Section 8(a)(4) was intended "to afford broad rather than narrow protection to the employee." *NLRB v. Scrivener,* 405 U.S. 117, 122, 92 S.Ct. 798, 802, 31 L.Ed.2d 79 (1972). A rule that an employer did not have to consider an employee's request to discuss his work status while a charge was pending would leave the employee in limbo indefinitely and would discourage recourse to the remedies of the National Labor Relations Act. This is not to say that an employer may not take reasonable steps to protect itself. Romanowicz could have listened to McCarthy without committing himself and promised a prompt written reply after consultation with Globe's attorney. The Company could have communicated responsively with McCarthy without jeopardizing its legal position. *NLRB v. Syracuse Stamping Co.,* 208 F.2d 77, 80 (2d Cir. 1953).

Globe points out that in some earlier cases the Board has tended to excuse employers who have, at least temporarily, refused to consider the status of employees during the pendency of charges. *Charlton Press, Inc.,* 129 N.L.R.B. 1352 (1961); *American Linen Service Co.,* 45 N.L.R.B. 902, 913 (1942); *Weyerhauser Timber Co.,* 31 N.L.R.B. 258, 268 (1941).[3] These cases are all factually distinguishable. *Charlton Press* concerned a brief delay in order to clear up confusion about the filing of charges. In *Weyerhauser* the employer demonstrated his nondiscriminatory intent by rehiring the employees. And the actions taken in *American Linen* were treated as a legitimate

refusal to entertain a settlement, letting the Board determine the outcome of a dispute. Even if the Board's interpretation of the Act may be somewhat more stringent in the present case than in former ones, we cannot say that the Board's interpretation is unreasonable or in excess of authority. *NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975); *American Trucking Ass'n v. Atchison, T. & S. F. Ry. Co.,* 387 U.S. 397, 416, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967). We accordingly affirm the finding of a § 8(a)(4) violation.

Turning to the matter of relief, Globe contends that the Board's remedial order "was not appropriate in the circumstances of this case." The Board ordered that the Company:

"1. Cease and desist from:

(a) Refusing to consider employees for reinstatement because unfair labor practice charges have been filed under the Act on their behalf.

(b) In any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act.

"2. Take the following affirmative action which is deemed necessary to effectuate the policies of the Act:

(a) Offer James McCarthy immediate and full reinstatement to his former job or, if that job no longer exists, to a substantially equivalent position, without loss of seniority or other rights and privileges, and make him whole for any loss of earnings that he may have suffered in the manner set forth in The Remedy section of this Decision.

(b) Preserve and, upon request, make available to the Board or its agents, for examination and copying, all payroll records, social security payment records, time-cards, personnel records and reports, and all other records necessary to analyze the amount of backpay due under the terms of this Order. . . ."

---

**3.** Courts have refused to sustain § 8(a)(4) violations where an employer refuses to employ a person who has filed charges based on fraudulent or fabricated claims. *NLRB v. Brake Parts Co.,* 447 F.2d 503 (7th Cir. 1971); *see also Iowa*

*Beef Packers, Inc. v. NLRB,* 331 F.2d 176 (8th Cir. 1964). While McCarthy's unfair labor practice charge filed prior to March 15 was later dismissed, it is not said to belong to this category.

Globe objects to clause 1(a) as being too broad since it refers to employees other than McCarthy, and similarly to clause 1(b) since it proscribes acts going beyond any for which Globe was found liable. Globe's objection to clause (b) must fail, however, whatever its possible merits, *see NLRB v. Beth Israel Hospital,* 554 F.2d 477, 483 (1st Cir. 1977), aff'd, —— U.S. ——, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978), since it was not raised before the Board, *NLRB v. United Shoe Machinery Corp.,* 445 F.2d 633 (1st Cir. 1971).

██ The objection to clause (a), while timely raised, is without merit. It seems to have become accepted practice for the Board to issue a cease and desist order pertaining generally to bargaining unit employees with respect to the unfair practice in issue. *See, e. g., Wm. S. Carroll, Inc.,* 232 N.L.R.B. No. 148 (1977), *enforcement denied on other grounds,* 578 F.2d 1 (1st Cir. June 23, 1978); *Rich's of Plymouth, Inc.,* 232 N.L.R.B. No. 98, *enf'd,* 578 F.2d 880 (1st Cir. June 6, 1978); *see generally May Dept. Stores, Inc. v. NLRB,* 326 U.S. 376, 390–92, 66 S.Ct. 203, 90 L.Ed. 145 (1945).

██ Finally, the Company contends that the Board's order of back pay and an offer of reinstatement to McCarthy is inappropriate since there was no showing that McCarthy would have been recalled for work had he been properly considered on March 15, and no showing that McCarthy was at any time physically able to work without a strong possibility of repeated injuries. It argues that had McCarthy been considered on March 15, he surely would not have been reinstated then because Dr. Quigley's month-old work permit did not offer a diagnosis contrary to Dr. Resnick's. Since impartial consideration is all the Board now

rules that McCarthy was due, an order of back pay and reinstatement is claimed to "amount to an unsupported and invalid exercise of the Board's authority" which does not effectuate the purposes of the Act.

The Board seeks to deflate this argument by relying on decisions that the actual dollars and cents due under a back pay order, and sometimes the availability of an appropriate job for reinstatement purposes, are often questions decided administratively, *after* a court grants enforcement of the Board's general remedial orders.[4] *NLRB v. Bird Machine Co.,* 174 F.2d 404 (1st Cir. 1949); *see NLRB v. Nickey Chevrolet Sales, Inc.,* 493 F.2d 103, 106 (7th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). The Board does not deny that in the instant case there remains a particularly serious and close question of whether McCarthy suffered any damages at all as a result of the conduct on March 15, 1974, that was found to be unlawful. If McCarthy was, in fact, not fit to return to work, the fact that Romanowicz refused to discuss his job status at the time would be *damnum absque injuria.* The Board does not assert otherwise, viz. it does not argue that McCarthy would be entitled to reinstatement and back pay if the Company is able to show in a later administrative hearing that McCarthy's physical condition rendered him unfit for reinstatement. Rather the Board points to notes 7 and 8 in its Supplemental Decision and Order, *see* our note 4, *supra,* as qualifying the broad sweep of the order we are now asked to enforce. The Board states in its brief,

"This reinstatement order does not foreclose the Company from contending in subsequent proceedings that McCar-

4. In the remedial section of the Board's opinion, the following footnotes appear:

"7 *Respondent also argues in essence that, even if on March 15 Romanowicz had discussed with McCarthy the possibility of the latter's return, Romanowicz would have rejected McCarthy on physical grounds. While this issue is relevant for remedy purposes (see below), it hardly is for purposes of establishing a violation where the filing of the unfair labor practice charge was offered as the only*

reason for the refusal to discuss McCarthy's return. We are not persuaded Respondent has disentangled any legitimate reasons for not considering McCarthy from the illegal one it itself proffered on March 15.

"8 McCarthy's suitability for reinstatement, and therefore the extent to which his pecuniary loss is fairly chargeable to the Respondent, is a matter that is properly resolved at the compliance stage of this case."

thy's physical condition rendered him unfit for reinstatement and that, if it had considered McCarthy's application for reinstatement on March 15, it would have rejected it for such a legitimate consideration. Nor does the Board's order preclude the Company from adducing evidence that, at some subsequent date, McCarthy's condition may have worsened to a degree which excused the Company from having to reinstate him as of that time.[7] Accordingly, read in its entirety, the Board's remedial order does not purport to allocate to the Company any losses for which it is not fairly chargeable."

"[7] Before the Board, the Company alleged that it possessed such evidence."

The Board goes on to justify entry and enforcement of the qualified reinstatement and back pay order at this time on the ground that the Company should bear the burden of meeting its terms to the extent it cannot in later compliance proceedings "disentangle the consequences for which it [is] chargeable from those for which it [is] immune."

This approach on these facts may seem to put the cart before the horse. On the other hand, we reject Globe's assertion that this court is in any position properly to rule on its claim that McCarthy was unemployable under the Company's standards, and we see no point in prolonging an already protracted case by declining enforcement and remanding.

The Board's approach, in practical application, seems acceptable on the understanding that Globe will be entitled to present its proofs, along the lines the Board has stated, and will be permitted to seek to disprove both damages and a duty to reinstate. Upon this understanding and interpretation of the Board's order stated herein, the petition for enforcement is granted.

*So ordered.*