Leonard CASWELL et al., Plaintiffs, Appellees,

v.

Joseph A. CALIFANO, Jr., etc., Defendant, Appellant.

No. 77–1514.

United States Court of Appeals, First Circuit.

Argued June 5, 1978.

Decided Aug. 16, 1978.

Verrell L. Dethloff, Jr., Atty. Social Security Div., Dept. of HEW, Baltimore, Md., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., George J.

Mitchell, U. S. Atty., Portland, Maine, and Randolph W. Gaines, Chief of Litigation, Baltimore, Md., were on brief, for defendant, appellant.

John Whitehouse Cobb, Boulder, Colo., for plaintiffs, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal is from one of a growing number of successful court challenges to the delays which attend the scheduling by the Social Security Administration (SSA) of administrative hearings afforded to applicants for disability benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401 et seq.[1] The United States District Court for the District of Maine, in an opinion reported at 435 F.Supp. 127 (1977), found that the administrative delays suffered by the eight named plaintiffs and the class they were certified to represent were unreasonable and thus violated section 205(b) of the Social Security Act, 42 U.S.C. § 405(b), and certain provisions of the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1). The Secretary was ordered to reduce the lapse of time between a request for hearing and the scheduling of the hearing to within 90 days, and to submit progress reports to allow the court to monitor compliance.[2] On this appeal, the Secretary raises three principal objections: that the district court lacked subject matter jurisdiction; that the case is not justiciable; and that present delays cannot be considered unreasonable. We shall deal with each of these objections in turn, but before doing so we describe the working of the Title II disability program and the problem of delay in greater detail.

### I

To establish disability and maintain the right to benefits under the Title II disability insurance program, a wage earner must adduce "such medical and other evidence of the existence [of the disability] as the Secretary may require," 42 U.S.C. § 423(d)(5), to demonstrate that he cannot "engage in any substantial gainful activity." Id. § 423(d)(1)(A). The evidence must establish the existence of the disability by means of "medically acceptable clinical and laboratory diagnostic techniques," id. § 423(d)(3), and that the disability is of such severity that

> [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . . Id. § 423(d)(2)(A).

When a person applies for benefits, the initial determination of eligibility is made by the local Social Security Office. If the claim is denied, the claimant may request the appropriate state agency to undertake a de novo reconsideration of the adverse decision upon affidavits and other papers. If still unsuccessful, the claimant becomes entitled to a hearing before an SSA Bureau of Hearings and Appeals administrative law

---

1. See White v. Mathews, 559 F.2d 852 (2d Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); Martinez v. Califano, No. 73–C–900 (E.D.N.Y. Apr. 4, 1978); Wright v. Califano, [1977–78 Transfer Binder] Unempl. Ins.Rep. (CCH) ¶ 15,272 (N.D.Ill. Nov. 17, 1977), appeal pending, Nos. 78–1174 & 78–1175 (7th Cir.); Blankenship v. Mathews, [1976–77 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 14,-739 (W.D.Ky. May 6, 1976), appeal pending, No. 76–2342 (6th Cir.). Other federal courts have condemned delays experienced by claimants for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., the application procedure for which is virtually identical to that for Title II benefits. See Barnett v. Califano, 580 F.2d 28 No. 77–

6166 (2d Cir. June 29, 1978), aff'g No. 74–270 (D.Vt. Feb. 22, 1976); Etier v. Califano, No. C–77–0520–WHO (N.D.Cal. Mar. 6, 1978).

2. The district court's order required that as of December 31, 1977, the Secretary must schedule and hold hearings in Title II disability cases in the District of Maine within 120 days of filing of a request, and that as of July 1, 1978, such hearings must be scheduled within 90 days after request. Excluded from the time limits are periods of delay directly caused by a claimant's failure to provide essential information and other delays directly caused or requested by the claimant. 435 F.Supp. at 136.

judge (ALJ), which entails a personal appearance and a full evidentiary hearing. *Id.* § 405(b). It is this administrative hearing which plaintiffs protest is being unreasonably delayed. The record made at that hearing is subject to administrative and, finally, to judicial review. *Id.* § 405(g). Plaintiffs in no way challenge this complex statutory scheme, but "seek only the opportunity to avail themselves of its procedures within a reasonable time frame." 435 F.Supp. at 130.

The problem of delays attending the scheduling of hearings and the issuance of decisions by administrative law judges in Title II disability cases is national in scope. *See* cases cited note 1 *supra.* The backlog of pending cases reached an all time high of 113,000 in April 1975 up from 36,780 in 1973. In recent years, requests for hearings have substantially increased due to the large volume of benefit claims filed under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 901 *et seq.,* and under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.,* which provides supplemental security income (SSI) for the aged. These black lung and SSI appeals have substantially increased the workload of the Title II judges. Legislative obstacles exacerbated the problem by preventing efficient use of the three distinct types of hearing officers who were separately handling Title II cases, black lung cases, and SSI cases. Additionally, SSA has had difficulties enlarging the hearing staff because other civil service hearing examiners were paid more.

Delays in the SSA hearing process have caused congressional concern, prompted periodic congressional hearings and led to passage in 1976 of legislation allowing greater flexibility in the use of SSA personnel for administrative hearings,[3] and in 1977 of legislation increasing the number of ALJs.[4] During hearings on the 1976 legislation, both the legislation's sponsors[5] and the SSA Commissioner[6] expressed the hope that the backlog would be brought under control and that hearings before the ALJs could be scheduled within 90 days of request by July 1977.

The undisputed facts of this case reveal that the SSA has fallen far short of this 90 day goal. Each of the eight named plaintiffs applied for Title II benefits and, following initial and reconsideration denials, requested a hearing under 42 U.S.C. § 405(b). Of the named plaintiffs, the shortest waiting period from request to the scheduled hearing was 369 days, the longest was 439 days and the average was 398 days. In terms of a decision, the average elapsed time from the request for a hearing was 569 days, or some 19 months. None of the named plaintiffs upon whose cases these statistics are based is charged with any default or action which delayed scheduling of the hearings.

The plaintiff class, as certified by the district court, includes all residents of the District of Maine who have applied for disability benefits under Title II; who have received an adverse initial and reconsideration determination; who have filed a timely request for a hearing; whose request has been pending for sixty days or longer; and for whom a hearing has not been scheduled. The delays experienced by the class are only slightly less lengthy than those suffered by the named plaintiffs. In May 1976, the average waiting time between request and hearing was 11.5 months for the New England Region. In Maine, as of March 1976, the median elapsed time was 367 days, over one year. As forty-five percent of all New England claimants who chose to appeal an

---

3. Pub.L.No. 94–202, § 3, 42 U.S.C. § 1383 (1977 Supp.) gave the Secretary temporary authority to shift SSI hearing examiners to Title II cases.

4. Pub.L.No. 95–216, § 371, 91 Stat. 1509, provided for the conversion of the temporary ALJs, appointed under Pub.L.No. 94–202, to regular ALJ status.

5. *See* S.Rep. No. 94–550, 94th Cong., 1st Sess., 2 U.S.Code Cong. & Admin.News, p. 2349 (1975).

6. See written responses of SSA Commissioner James B. Cardwell, in Delays in Social Security Appeals: Hearings before the Subcomm. on Social Security of the House Comm. on Ways and Means, 94th Cong., 1st Sess. 74 (1975).

adverse decision are ultimately found eligible, it can be said that nearly one half of the plaintiff class is subject to a lengthy deprivation of benefits before receiving that to which they are entitled.

The Secretary has attempted to reduce the backlog. In January 1976, a new hearing office was opened in Portland, Maine, and three ALJs now are permanently assigned to that office. A temporary detail of eight additional ALJs assigned to Maine in the fall of 1976 was able to dispose of 307 pending cases. These efforts have, however, failed to resolve the problem of extensive delays. In January 1976, there were 346 pending requests for which no hearing had been scheduled; by April 1976, this number had increased to 396. Even after assignment of the out-of-state ALJs, approximately 300 requests were pending as of January 1977, without a hearing having been scheduled. That number appears destined to grow. The three full time ALJs have been averaging 50 hearings per month, while an average of 64 hearing requests per month are received. The result, as the district court noted, is a monthly increase in the already existing backlog.[7] 435 F.Supp. at 131.

## II

Relying on *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the district court found jurisdiction under 42 U.S.C. § 405(g). We agree that the court had jurisdiction under that provision.[8] To be sure, the literal terms of § 405(g) provide only for review of "any final decision of the Secretary" and hence would seem to require, as a jurisdictional prerequisite, exhaustion of administrative remedies.[9] In *Eldridge*, however, a Title II recipient brought a constitutional challenge to SSA's assessment procedures without exhausting administrative remedies after his benefits had been terminated without hearing. The Supreme Court, nonetheless, found jurisdiction under § 405(g). The Court first noted that *Weinberger v. Salfi*, 422 U.S. 749, 757–59, 95 S.Ct. 1422, 45 L.Ed.2d 522 (1975), had held that § 405(h),[10] precludes federal question jurisdiction over actions challenging the denial of benefits, thus making § 405(g) the exclusive basis for such review. It then went on to explain the exhaustion requirement of that provision:

> Implicit in *Salfi*, however, is the principle that this condition [a final decision after a hearing] consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case. The waivable element is the requirement that

---

7. The delays experienced by the plaintiffs in this case appear to be substantially worse than in the nation as a whole. *See White v. Mathews*, 559 F.2d 852, 855 (2d Cir. 1977), *cert. denied*, 46 U.S.L.W. 3541 (Feb. 28, 1978) (delay in Connecticut, 211 days; nationally, 195 days).

8. Our agreement with the district court that jurisdiction may be based on § 405(g), makes it unnecessary to consider whether the district court was also correct in finding mandamus jurisdiction under 28 U.S.C. § 1361. Although it is not easy to square the relief provided in this case with the traditional limitations of mandamus, *see, e. g., Cervoni v. Secretary of HEW*, 581 F.2d 1010–1019.20, (1st Cir. June 27, 1978), there is a body of recent precedent, particularly in the Social Security field where jurisdictional difficulties seem to abound, that § 1361 is elastic enough to cover cases such as this. *See, e. g., Barnett v. Califano*, No. 77–6166 (2d Cir. June 29, 1978); *Elliot v. Weinberger*, 564 F.2d 1219 (9th Cir. 1977); *White v. Mathews*, 559 F.2d 852 (2d Cir. 1977), *cert.*

denied, 46 U.S.L.W. 3541 (Feb. 28, 1978); *Ryan v. Shea*, 525 F.2d 268 (10th Cir. 1975); *Frost v. Weinberger*, 515 F.2d 57 (2d Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *see also Matos v. Secretary of H. E. W.*, 581 F.2d 282, 287 n.8 (1st Cir. 1978).

9. 42 U.S.C. § 405(g) provides in relevant part:
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action . . . .

10. 42 U.S.C. § 405(h) provides in part:
 No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or government agency except as herein provided. No action against . . . the Secretary . . . shall be brought under section 41 of Title 28 [28 U.S.C. §§ 1331 *et seq.*] to recover on any claim arising under this subchapter.

the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute. 424 U.S. at 328, 96 S.Ct. at 899.

It is not disputed that plaintiffs have satisfied the "nonwaivable" element of *Eldridge's* finality test. Each member of the plaintiff class has, by definition, presented a claim for benefits and, after initial adverse decisions, has requested a hearing the delay of which is now in issue. As to the "waivable" element, it appears that either the Secretary, or the court in a proper case, can "waive" the exhaustion requirement. *See Mathews v. Eldridge, supra; Liberty Alliance for the Blind v. Califano*, 568 F.2d 333, 343–47 (3d Cir. 1977). As explained in *Eldridge*, such a case arises where the "claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment [on the need for exhaustion] is inappropriate." 424 U.S. at 330, 96 S.Ct. at 900. This is such a case. Plaintiffs' statutory and constitutional claims are entirely "collateral to [their] substantive claim[s] of entitlement." *Id.* Thus, waiver in no way circumvents the exhaustion requirement on the issue of the merits of the denial of benefits.[11] Second, despite the Secretary's claim to the contrary, effective relief cannot be obtained by awaiting the final determination, even if retroactive benefits are available. Whatever the relevance of retroactive benefits to the question of whether certain procedures satisfy due process, *cf. Lavine v. Milne*, 424 U.S. 577, 587, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), it is simply not true that a claimant for disability benefits, not infrequently in dire financial circumstances due to his disability, is truly made whole by retroactive payments which he has had to survive perhaps well over a year without. *Cf. Frost v. Weinberger*, 515 F.2d 57, 62 (2d Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). Moreover, requiring a final determination might moot any individual plaintiff's claim of right to an expeditious hearing and would at very least deprive him of the chance to obtain relief on his claimed right to a hearing more expeditiously than the Secretary will afford. As the district court noted, "It would indeed be ironic if the very delay now under attack which prevents the exhaustion of administrative remedies through no fault of the plaintiffs, constitutes a barrier to this Court's jurisdiction under Section 405(g)." 435 F.Supp. at 133. We therefore uphold the district court's conclusion that it had jurisdiction under that section.[12] *Mathews*

11. This fact renders inapposite the Secretary's reliance on *Salfi* and *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980 (1977). *Sanders* and *Salfi* both involved plaintiffs seeking to overturn or reopen decisions by the Secretary denying benefits. This case, on the other hand, does not involve the merits of whether members of the plaintiff class are entitled to benefits. Plaintiffs seek only to be afforded the opportunity to submit their claims to the administrative process within a reasonable time. Permitting this action undermines neither the requirement of administrative exhaustion, as interpreted in *Eldridge*, nor the role of § 405(g), with its various procedural limitations, as the exclusive jurisdictional basis for challenges to the merits of an SSA denial of benefits under the Act. *See White v. Mathews*, 559 F.2d 852, 856 (2d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

12. In *Weinberger v. Salfi*, 422 U.S. 749, 764–65 & n.8, 95 S.Ct. 1422, 45 L.Ed.2d 522, the Court held that a class action for injunctive relief could not be maintained under § 405(g), where unnamed members of the class had not filed applications for benefits and where the Secretary had not rendered any type of decision as to their claims. Relying on *Salfi*, the Secretary argues that § 405(g) bars even an otherwise proper class action for injunctive relief. We think that *Salfi* must be read in light of the *Eldridge* Court's subsequent treatment of § 405(g)'s exhaustion requirement. Unlike the class members in *Salfi*, here each member of the plaintiff class has, by definition, applied for benefits and has received an initial adverse determination. On its face, § 405(g) does not purport to limit the traditional scope of the equitable powers of the federal courts nor that of Rule 23, Fed.R.Civ.P. We are little inclined to so read it, when no purpose would be served by requiring each class member individually to submit their common legal question as to the reasonableness of the delays for adjudication in separate administrative and judicial actions.

v. Eldridge, supra; Jones v. Califano, 576 F.2d 12, 18–19 (2d Cir. 1978); Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 344–46 (3d Cir. 1977); Tatum v. Mathews, 541 F.2d 161, 164 (6th Cir. 1976); Blankenship v. Mathews, [1976–77 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶ 19,739 (W.D.Ky. May 6, 1976).

## III

The district court found that the delays to which the plaintiffs were subjected in obtaining a hearing before an administrative law judge to challenge the denial of Title II disability benefits violated the requirements of the Social Security Act and the Administrative Procedure Act. Under 42 U.S.C. § 405(b), the Secretary is required to make "decisions as to the rights of any individual applying for a payment" of benefits. Upon request of an unsuccessful claimant, the Secretary is directed to provide him with "reasonable . . . opportunity for a hearing" to challenge the adverse decision. The Administrative Procedure Act provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it . .," 5 U.S.C. § 555(b), and that the reviewing court "shall . . . (1) compel agency action unlawfully withheld or unreasonably delayed . . .." 5 U.S.C. § 706(1).[13] We agree with the lower court that the Secretary is under a statutory duty to hold hearings within a time that is reasonable under the circumstances; and we are also satisfied on this record, see discussion in Section III, B, infra, that the lower court did not err in finding that the delays then experienced by plaintiffs were unreasonable.

## A

Neither the Administrative Procedure Act nor the Social Security Act expressly defines what is a reasonable time in which Title II disability claimants must be afforded a hearing. Pointing to this fact, the Secretary argues that the timing of hearings is a matter committed solely to his discretion, thus precluding judicial review and relief.

■ We agree that the Secretary has substantial discretion in the scheduling of hearings and that courts must normally defer to agency judgment to allow the evolution of procedures as needs arise. See Wright v. Richardson, 405 U.S. 208, 209, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972). Yet equally clear is the Secretary's statutory duty to provide a hearing at a meaningful and reasonable time. White v. Mathews, supra, 559 F.2d at 858. His discretion would not encompass a system which routinely, as the district court found, schedules hearings at unreasonably distant times. Where the delays exceed the bounds of reasonableness, the Secretary may be judicially required to act with greater dispatch so as to meet his statutory obligation.

■ Under both general equitable powers and powers granted under the APA, courts can insure that statutory rights are not denied by agency inaction. See, e. g., Nader v. FCC, 172 U.S.App.D.C. 1, 520 F.2d 182 (1975); Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970); Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961);

---

Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 343–47 (3d Cir. 1977); Jones v. Califano, 576 F.2d 12, 18–22 (2d Cir. 1978); In re Letourneau, 559 F.2d 892 (2d Cir. 1977); Jimenez v. Weinberger, 523 F.2d 689, 694–95 (7th Cir. 1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976).

As to the Secretary's contentions that the plaintiff class failed to satisfy the requirements of Rule 23, we pause only to note that they are clearly without merit. See White v. Mathews, 559 F.2d 852, 858 (2d Cir. 1977), cert. denied,

435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

13. The Secretary's claim that the Administrative Procedure Act is not applicable to actions of the Social Security Administration is contrary to both the language of the statute and the case law of this and other circuits. See Ruiz-Olan v. Secretary, HEW, 511 F.2d 1056, 1058 (1st Cir. 1975); Maddox v. Richardson, 464 F.2d 617 (6th Cir. 1972); cf. Richardson v. Perales, 402 U.S. 389, 409, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1970). We reject it.

*American Broadcasting Co. v. FCC*, 191 F.2d 492 (D.C.Cir.1951). The right to a hearing within a reasonable time is a legally enforceable one. *See Deering Milliken v. Johnston, supra.* To give substance to that right, courts, even absent express statutory time limits, on occasion must decide whether delays exceed the bound of reasonableness and, if so, must set time limits for agency action to insure that statutory rights are vindicated. *See White v. Mathews, supra; Environmental Defense Fund, Inc. v. Hardin, supra; Cornelius v. Minter*, 395 F.Supp. 616 (D.Mass.1974); *see also Like v. Carter*, 448 F.2d 798 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972).

Even assuming that his discretion is not unlimited, the Secretary argues that this case presents issues which are not justiciable. He points to the recent congressional inquiries into, and efforts to alleviate the hearing delay problem, claiming that such congressional action precludes judicial intervention. More particularly, he notes that Congress has acted to increase the number of ALJs available to hear Title II cases, but as yet has not seen fit to impose time limits for the scheduling of hearings.

It may well be that in certain cases legislative efforts to deal with a problem so clearly manifest Congress' intent that its remedy be exclusive that further judicial relief would be inappropriate. However, such a clear intent to preempt the field is not present here. We cannot construe, as the Secretary urges, congressional concern with the delay problem as an expression of Congress' belief that no problem really exists. Congress did not eliminate the reasonableness requirement, *see Barnett v. Califano*, 580 F.2d 18, 31 (2d Cir. 1978), and its limited efforts to ameliorate the delays appear to have been premised, at least in part, upon representations by the SSA Commissioner that simply by increasing the number of ALJs, as provided for by the 1976 legislation, hearings could be provided within 90 days of request by July 1977.

 In any event, congressional action to date, far from reflecting a view that the delays complained of here are reasonable, in fact suggests that Congress believes the problem to be a serious one. And while we agree that Congress must bear the ultimate responsibility for remedying problems in the administration of federal programs, *see FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940); *cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), that does not mean that a judicial role is precluded where the statutory mandate is not being followed. The fact, moreover, that the courts seek to remedy the violation of a federal statute in no way precludes Congress from providing additional or different relief, or from clarifying or modifying the statute if the judicial interpretation is not approved. Finally, it is clear that no violence to the principle of the separation of powers arises from judicial efforts to enforce a congressional mandate.

 Thus, this action is not rendered nonjusticiable merely because of previous congressional involvement. Our inquiry, however, does not end there. When the courts are asked to reshape other government institutions, the "task [is not] to be undertaken lightly." *Ad Hoc Committee on Judicial Administration v. Commonwealth of Massachusetts*, 488 F.2d 1241, 1244 (1st Cir. 1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974). In determining whether the task should be undertaken at all, we must ascertain (1) whether the duty asserted can be judicially identified; (2) whether its breach can be judicially determined; and (3) whether protection for the rights asserted can be judicially molded. *Ad Hoc Committee, supra, quoting Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

It is clear that plaintiffs have a statutory right to a hearing within a reasonable time after request. The question, however, is whether that right can be translated into an identifiable duty on the part of the Secretary to provide hearings within judicially set time limits. Concededly, the circumstances of individual cases will require

some variation. We do not believe, however, that the 90 day period imposed by the district court was an abuse of the court's discretion. To give substance to the plaintiffs' right to a hearing, the court was required to devise a meaningful remedy. Given the fact that the SSA has represented to Congress, *see* note 6 *supra*, and to several federal courts, *see Blankenship v. Mathews, supra* at 2499–61; *White v. Mathews*, 434 F.Supp. 1252, 1256–57 (D.Conn. 1976), *aff'd*, 559 F.2d 852 (2d Cir. 1977), that hearing delays of no more than 90 days were feasible, the court's order appears reasonable enough. *See White v. Mathews, supra*, 559 F.2d at 859–60. Further, we do not believe that the court's order will unduly deprive the Secretary of the flexibility needed in individual cases nor will it render a determination of violations of the Secretary's duty unduly problematic. The district court's order was carefully drawn. No constraints were imposed as to the time in which a decision must be rendered after a hearing has been held. Thus, the ALJs are free to give as much attention to a particular case as its complexity requires. In addition, the 90 day period applies only in cases where the applicant is ready to proceed. Excluded are periods of delay caused by the applicant's failure to provide necessary information.[14]

Turning next to the ability of the courts to devise a fair and effective remedy, we start with the proposition that the district court possesses considerable discretion in formulating an equitable remedy to vindicate plaintiffs' right to a hearing within a reasonable time. *See generally Milliken v. Bradley*, 433 U.S. 267, 280–81, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Hills v. Gautreaux*, 425 U.S. 284, 297, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15–16, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1970). Several courts faced with similar claims of unreasonable delay have required agency action within specified time limits. *See, e. g.,*

*Barnett v. Califano, supra; White v. Mathews, supra; Nader v. FCC, supra; cf. United States v. Thirty-seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). The Secretary argues, however, that the order here and those entered in similar actions around the country, *see* cases cited note 1 *supra*, have exacerbated, rather than solved the hearing delay problem since they have required the shifting of scarce personnel to some areas to the detriment of others, and that at some point, as the number of such orders increases, there simply will be insufficient personnel to comply with all of them.

The possibility that an order requiring expeditious hearings in Maine will adversely affect disability applicants in other states, of course, is a matter of concern. The Secretary, however, does not argue that such a dire situation yet exists. Moreover, the plaintiffs here are not asking for special preferences or judicially superimposed priorities over other applicants. *Compare Open America v. Watergate Special Prosecution Force*, 178 U.S.App.D.C. 308, 547 F.2d 605 (1976). Rather, like the litigants in the other disability delay cases, plaintiffs simply seek to be afforded their right to a prompt hearing. Admittedly, that is not a complete answer for, if the Secretary's resources truly are inadequate to the task, the more litigious of the applicants may gain an advantage over the less assertive.

However, the vindication of almost every legal right has an impact on the allocation of scarce resources. And the courts, while mindful of the impact of remedies upon persons not before them, can hardly permit the legal rights of litigants to turn upon the alleged inability of the defendant fully to meet his obligations to others. *See Open America, supra*, 547 F.2d at 620–21 (Leventhal, J., concurring). We agree with the Second Circuit that the existence of similar orders in other jurisdictions supports the

---

14. We also note that courts have given a sympathetic ear to good faith claims of impossibility of full compliance with a court order as a ground for forestalling citation for contempt.

*See Wash. Metro Area Tr. Auth. v. Amal. Tr. Union*, 174 U.S.App.D.C. 285, 531 F.2d 617, 621 (1976).

relief granted here, but also that it is likely that an ultimate, comprehensive solution to the problem of hearing delays may well require congressional action. *See Barnett v. Califano, supra,* 580 F.2d at 32. We cannot in good conscience, however, deny relief to the plaintiffs pending such action. We conclude that this case presents a justiciable controversy and turn accordingly to the question of whether the delays complained of have denied plaintiffs their right to a "reasonable . . . opportunity for a hearing."

### B

■ By virtue of the delays plaguing the Title II disability program, these plaintiffs have been required to wait for periods of up to and exceeding one year before receiving their statutorily guaranteed hearing. Concededly, the reasonableness of administrative delay depends upon a number of factors,[15] but in light of the nature of the disability benefit program and the impact of delays of this magnitude upon applicants, we agree with the district court that the statutory command has been violated. As the court in *White v. Mathews, supra,* recently noted,

> The disability insurance program is designed to alleviate the immediate and often severe hardships that result from a wage-earner's disability. In that context, delays of the better part of a year in

merely affording an evidentiary hearing detract seriously from the effectiveness of the program. Perhaps this unfortunate impact might be diminished to a tolerable level if a high percentage of claimants seeking hearings before an administrative law judge were not actually entitled to benefits. But such hearings have led to reversals in [nearly] half the cases heard. 559 F.2d at 858. [Footnote omitted.][16]

We recognize, as did the district court, that the Secretary has had to cope with serious difficulties stemming from a substantial increase in caseload and from staffing problems. Further we note and commend administrative efforts to reduce delays. Given the fact that the backlog continues to grow, however, it seems clear that more is required. We agree with the Second Circuit and the district court that these administrative problems do not, at least on the circumstances presently shown to exist, establish that the plaintiffs have been afforded a "reasonable . . . opportunity for a hearing." *Barnett v. Califano, supra; White v. Mathews, supra.* The district court, of course, has jurisdiction to modify its order if changed circumstances warrant.

We have considered the Secretary's other objections and find them to be without merit. The judgment of the district court is affirmed.[17]

---

**15.** We think that the severe hardships which must obviously attend the erroneously delayed payment of disability benefits distinguish this case from cases relied upon by the Secretary in which courts in the context of other varieties of administrative proceedings have found particular instances of delay not unreasonable. *See, e. g., Open America v. Watergate Spec. Pros. Force,* 178 U.S.App.D.C. 308, 547 F.2d 605 (1976); *Chromcraft Corp. v. EEOC,* 465 F.2d 745 (5th Cir. 1972); *FTC v. J. Weingarten, Inc.,* 336 F.2d 687 (5th Cir. 1964), *cert. denied,* 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 796 (1965); *Deering Milliken, Inc. v. Johnston,* 295 F.2d 856 (4th Cir. 1961); *cf. United States v. Smith,* 443 F.2d 1278 (9th Cir. 1971).

**16.** *See Mathews v. Eldridge,* 424 U.S. 319, 342, 96 S.Ct. 893, 906, 47 L.Ed.2d 18 (1976) (noting that "[i]n view of the torpidity of [the Title II] administrative review process, . . . and

the typically modest resources of the family unit of the physically disabled worker, the hardship imposed upon the erroneously terminated disability recipient may be significant."); Study of the Social Security Administration Hearing System, (Center for Administrative Justice, October 1977) at 57–58 (claimants likely to suffer "great damage" and "high psychic costs" from delays in the disability determination process); *see also Fusari v. Steinberg,* 419 U.S. 379, 387–88, 95 S.Ct. 533, 42 L.Ed.2d 521 (1974); *Barnett v. Califano,* 580 F.2d at 33 (2d Cir. 1978); *Gardner v. Smith,* 368 F.2d 77, 86 (5th Cir. 1966).

**17.** The district court did not reach plaintiffs' constitutional claim that the delays complained of deny them due process of law. We likewise do not reach that claim and express no view as to its merit.