UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1507

HOLYOKE VISITING NURSES ASSOCIATION
AND O'CONNELL PROFESSIONAL NURSE SERVICE,

Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD

Before

Torruella, Circuit Judge,

Rosenn,* Senior Circuit Judge

and Stahl, Circuit Judge.

Albert R. Mason for petitioners.

John D. Burgoyne, Assistant General Counsel, National Labor

Relations Board, with whom Jerry M. Hunter, General Counsel, Yvonne T.

Dixon, Acting Deputy General Counsel, Nicholas E. Karatinos, Acting

Associate General Counsel, Aileen A. Armstrong, Deputy Associate

General Counsel, National Labor Relations Board, were on brief for
respondent.

December 17, 1993

*Of the Third Circuit, sitting by designation.

ROSENN, Senior Circuit Judge. Holyoke Visiting

Nurses Association (Holyoke) and O'Connell Professional

Nurse Service, Inc. (O'Connell, Inc.) (collectively, the

Petitioners) seek review of an order of the National Labor

Relations Board (the Board) which required them to cease and

desist from unfair labor practices and from infringing upon

their employees' Section 7 rights under the National Labor

Relations Act as amended (the Act), 29 U.S.C. 151 et seq.,

to make employee Eileen Bourque whole for any loss of

earnings suffered by her, and to post an appropriate

notice.1 The Board cross-applies for enforcement of its

order against the Petitioners. We deny the Petitioners'

petition for review, and we grant the Board's cross-

application for enforcement against the Petitioners.

I.

Holyoke, a private, non-profit organization,

provides nursing services, home health aide, homemaker, and

hospice care to people in their own homes. Holyoke's

employees are represented for purposes of collective

bargaining by Service Employees International Union, Local

1The Board had jurisdiction over this matter under section
10(a) of the Act, 29 U.S.C. 160(a), and we have
jurisdiction over this appeal pursuant to 29 U.S.C.
160(e).

-2-
2

285 (the "Union"). Holyoke's activities are directed by its

Director of Hospice, Patricia Cavanaugh.

O'Connell, Inc. is a referral agency that supplies

nurses and licensed practical nurses to hospitals and other

institutions on a per diem or hourly rate basis. The

activities of O'Connell, Inc. are directed by its president

and sole stockholder, Francis O'Connell. O'Connell, Inc.

hires the nurses and licensed practical nurses, carries

insurance on them, sets their wage rates, and pays them for

their work, making appropriate deductions for taxes.

O'Connell, Inc.'s employees are not represented by a union

and do not participate in any collective bargaining.

The Petitioners have a written contract under which

O'Connell, Inc. makes its nurse employees available to

Holyoke as needed and Holyoke reimburses O'Connell, Inc. for

their services at a specified hourly rate. Typically, the

nurses supplied arrive at Holyoke's office in the morning

where Holyoke supervisors give them a list of patients that

they are to attend, a report on the patients' conditions,

and directions to the patients' homes. Holyoke supplies the

persons referred with a visiting nurse bag containing a

stethoscope and blood pressure cup. The nurses take the

same breaks as Holyoke employees and frequently eat lunch

-3-
3

with them. If a problem arises during the day, the referred

employees contact their Holyoke supervisor. After making

their rounds and before leaving for the day, they report to

one of the Holyoke supervisors to discuss the patients and

file written reports which become the property of Holyoke.

Holyoke supervisors make decisions concerning the continued

use of referred nurses based on need and the feedback that

they receive from patients and staff. If a referred nurse

does not meet Holyoke's standards, Holyoke has the authority

to reject that person in the future.

In late 1990 and early 1991, Holyoke and the Union

renegotiated their collective bargaining agreement. One of

the issues was the security maintained by Holyoke in its

parking lot. The area surrounding the parking lot had

become dangerous because of nearby drug dealing and

prostitution, and two Holyoke nurses had been assaulted

there. In January, 1991, Holyoke employees voted to engage

in a practice called "work to rule" in order to support

their contract demands. That is, as a show of solidarity,

they decided to arrive as a group at 8:00 A.M., take their

breaks together, and leave as a group at 4:30 P.M.

On a number of occasions in 1990 and 1991,

O'Connell, Inc. referred Eileen Bourque, a registered nurse

-4-
4

employed by it, to Holyoke. Initially, Bourque frequently

arrived for work 15 or 20 minutes prior to her 8:00 A.M.

starting time and waited outside until a Holyoke employee

arrived to open the building. After the assaults in the

fall of 1990, however, Bourque stayed in her car until

another person arrived. In January, 1991, Bourque overheard

Holyoke employees talking about their intention to arrive

for work as a group at 8:00 A.M. Because of her safety

fears, Bourque ceased coming to work early and instead

arrived for work at 8:00 a.m. to enter the building with the

Holyoke nurses. One day, Holyoke Director Cavanaugh watched

the staff enter the building and saw Bourque walk in with

the group. Suspecting that Bourque was joining forces with

the Holyoke nurses in their union activities, Cavanaugh

telephoned O'Connell and complained about Bourque.

Shortly thereafter, Bourque became sick and was

unable to work from January 17 to February 5, 1991. Upon

her return, she was told to meet with O'Connell. At the

meeting, O'Connell informed Bourque that she had been

observed walking into the Holyoke office with the nurses who

were in a "work to rule" protest, that Cavanaugh believed

that such action was a demonstration of Bourque's allegiance

for the Union, and that Cavanaugh had requested that she not

-5-
5

be reassigned to Holyoke. Bourque explained to O'Connell

that she entered the building with the Holyoke nurses for

safety and security reasons, and that she had not taken part

in any union activity. O'Connell replied that he would

relate Bourque's explanation to Cavanaugh, but advised

Bourque that Holyoke was his bread and butter and if

Cavanaugh wanted to stand by her decision, she did not have

to give him any reason for rejecting a referred employee.

O'Connell further cautioned Bourque that she should remain

neutral and uninvolved with the Holyoke employees. A week

later, O'Connell informed Bourque that Cavanaugh understood

the safety issue, and that everything was back to normal.

Bourque was again referred to Holyoke on February 19, 1991.

Subsequently, Bourque filed a charge with the Board

and the Board's General Counsel issued a complaint. At a

hearing before an administrative law judge (ALJ), he

rendered a decision and recommended order holding that the

Petitioners were joint employers under the Act. The ALJ

also held that the Petitioners violated sections 8(a)(1) and

(3) of the Act by threatening and denying employment to

Bourque because of their mistaken belief that she had

assisted Holyoke's employees in their protected and union

activities. The Board adopted the recommendations of the

-6-
6

ALJ and ordered the Petitioners to cease and desist from the

unfair labor practices found and from infringing upon their

employees' Section 7 rights.2 The Board also required the

Petitioners to make Bourque whole for any loss of earnings

suffered by her and to post an appropriate notice.

II.

The Petitioners essentially raise two issues on

appeal. First, they contend that the Board erred in holding

that they are joint employers of the employees referred by

O'Connell, Inc. to Holyoke. Second, the Petitioners argue

that the Board erred in ruling that they violated sections

8(a)(1) and (3) of the Act by threatening and denying

employment to Bourque.

A. Joint Employers

A joint employer relationship exists where two or

more employers exert significant control over the same

employees and share or co-determine those matters governing

essential terms and conditions of employment. Rivas v.

Federacion de Asociaciones Pecuaria de Puerto Rico, 929 F.2d

814, 819-20 (1st Cir. 1991); see also NLRB v. Browning-

2The Board modified the ALJ's recommended Order to provide
that the statements made by O'Connell to Bourque concerning
her involvement with the Union violated section 8(a)(1) of
the Act.

-7-
7

Ferris Industries, Inc., 691 F.2d 1117, 1124 (3d Cir. 1982).

Whether an employer possesses sufficient indicia of control

to be a employer is essentially a factual issue. Rivas, 929

F.2d at 819-20 (citing Boire v. Greyhound Corp., 376 U.S.

473, 480-81 (1964)). Thus, the Board's finding of joint

employer status is entitled to acceptance by this court if

it is supported by substantial evidence on the record as a

whole. See NLRB v. Horizon Air Servs., Inc., 761 F.2d 22,

25 (1st Cir. 1985).

This court has not set forth a specific test to use

in evaluating whether a joint relationship exists. In

Rivas, the court acknowledged that other courts have

emphasized a number of relevant considerations. Rivas, 929

F.2d at 820-21. See e.g., W.W. Grainger, Inc. v. NLRB, 860

F.2d 244, 247 (7th Cir. 1988) (joint employment can be found

from "such factors as the supervision of the employees' day-

to-day activities, authority to hire or fire employees,

promulgation of work rules and conditions of employment,

work assignments, and issuance of operating instructions"

and the right to refuse a referred employee); Clinton's

Ditch Cooperative Co. v. NLRB, 778 F.2d 132, 138-39 (2d Cir.

1985) (determination of joint employer status can be found

from employer's power over hiring and firing; discipline;

-8-
8

pay, insurance and records; supervision; and participation

in collective bargaining process), cert. denied, 479 U.S.

814 (1986); Ref-Chem Co. v. NLRB, 418 F.2d 127, 129 (5th

Cir. 1969) (joint employers found from evidence that company

had right to approve employees, control number of employees,

remove an employee, inspect and approve work, and pass on

changes in pay and overtime allowed).

The Board's finding that Holyoke possessed

sufficient control over the O'Connell, Inc. employees to be

deemed a joint employer is supported by substantial

evidence. First, Holyoke had the right to refuse to accept

any employee that it did not want. The record shows that

Holyoke monitored the performance of the referred employees

and if an employee did not meet its standards, Holyoke could

and did require that O'Connell, Inc. refrain from referring

the employee again. The record further shows that O'Connell

completely deferred to Holyoke's demands concerning which

referrals would be accepted by Holyoke. In fact, Holyoke

exercised its power in this case to refuse Bourque as a

referral. Second, the record reveals that Holyoke assumed

supervision over the referred employees. The referred

employees reported to Holyoke's office where they were given

certain supplies, the day's work assignment, a report on the

-9-
9

patients' conditions, and directions to the patients' homes.

If referred employees encountered a problem during the day,

they were instructed to contact a Holyoke supervisor for

advice. At the end of the day, the referred employees

returned to the Holyoke office and made a written report to

Holyoke of their activities. Moreover, the Petitioners

acknowledge that in the eyes of their patients, the referred

nurses were regarded as Holyoke employees.

The Petitioners argue that with professional

personnel, by definition, there may be direction as to where

to go, but no control or supervision as to "how" to do the

assignment involved. They liken this case to the

professional drivers discussed by the Board in Laerco

Transportation & Warehouse, 269 NLRB 324 (1984), in which

the Board found that Laerco's supervision over the referred

employees was too routine to make Laerco a joint employer.

As discussed above, however, the supervision exercised by

Holyoke over the O'Connell, Inc. referrals was more than

routine. That the referred employees were professional

nurses who may not have required much instruction as to how

to perform their work does not negate the power of

supervision and direction that Holyoke exercised over them

once they reported for work.

-10-
10

More important than the factual distinctions between

cases are the specific facts of this particular case. In

Carrier Corp. v. NLRB, 768 F.2d 778, 781 (6th Cir. 1985),

the Sixth Circuit Court of Appeals rejected an argument

identical to the one made here by Holyoke. The court found

that the same cases cited by Holyoke3 were not dispositive

for two reasons.

First, because the joint employer issue is
simply a factual determination, a slight
difference between two cases might tilt a
case toward a finding of a joint employment.
. . . Second, the only question before this
Court is whether in this particular case
there is substantial evidence to support the
Board's finding that [the petitioner] was a
joint employer. As we have discussed in the
text, we believe there was ample evidence to
support such a finding. Whether there could
have been substantial evidence to support a
finding of joint employment in the above-
cited Board decisions is not an issue before
the Court.

Id. at 781-82 n.1. Accord NLRB v. Western Temporary Servs.,

Inc., 821 F.2d 1258, 1267 n.8 (7th Cir. 1987).

In this case, the ALJ's finding that the Petitioners

are joint employers, which was adopted by the Board, is

supported by substantial evidence. Holyoke demonstrated its

3TLI Inc., 271 NLRB 798 (1984), enforced without op General

Teamsters Local Union No. 326, etc. v NLRB, 772 F.2d 894

(3d. Cir. 1985); H&W Motor Express, Inc., 271 NLRB 466

(1984); Laerco, 269 NLRB 324.

-11-
11

joint control of the referred employees by, inter alia, its

unfettered power to reject any person referred to it by

O'Connell, Inc., and its substantial control over the day-

to-day activities of the referred employees. Thus, we see

no error in the Board's finding that the Petitioners are

joint employers of the employees referred by O'Connell, Inc.

to work for Holyoke.

B. Violation of the Act

The Petitioners next contend that the Board erred in

finding that they violated sections 8(a)(1) and (3) of the

Act by threatening and denying employment to Bourque.

Employers violate sections 8(a)(1) and (3) of the Act by

threatening reprisals or discriminating against employees

because they engage in union or other activities protected

by the Act or are suspected of doing so. See NLRB v Horizon

Air Servs., Inc. 761 F.2d at 26 n.2; NLRB v. American Spring

Bed Mfg. Co., 670 F.2d 1236, 1241-42 (1st Cir. 1982). Thus,

proof of an unfair labor practice does not require proof of

actual union activity; it is sufficient if the employer was

motivated by suspected union activity in discharging the

employee. See e.g., McLane/Western, Inc. v. NLRB, 827 F.2d

1423, 1425 (10th Cir. 1987).

-12-
12

In this case, the Holyoke employees adopted the

tactic of arriving for work together to support their

position in ongoing contract negotiations. Bourque joined

the group for safety reasons, not to support the Holyoke

employees. Cavanaugh observed Bourque with the Holyoke

employees and telephoned O'Connell to complain about

Bourque's support for the Union. O'Connell informed Bourque

of Cavanaugh's request that Bourque not return to Holyoke.

When Bourque explained that she had joined the group for

safety reasons, O'Connell replied that he would try to

explain that to Cavanaugh, but that Cavanaugh did not have

to give any reason for her request that Bourque not be

reassigned. O'Connell advised Bourque that she should

remain neutral and uninvolved with the Holyoke employees.

O'Connell subsequently resolved matters with Cavanaugh and

again referred Bourque to Holyoke.

At the hearing, both of the Petitioners denied that

Cavanaugh had asked O'Connell to stop referring Bourque to

Holyoke. The ALJ, however, found that "Bourque's testimony

was candid and straightforward, and [his] observations of

her demeanor convince[d him] that she was telling the truth

in her descriptions of her conversations with O'Connell."

The Board accepted the ALJ's credibility determinations.

-13-
13

The ALJ's credibility determinations are entitled to

great weight since he saw and heard the witnesses testify.

Rikal, Inc. v. NLRB, 721 F.2d 402, 406 (1st Cir. 1983). As

stated by this court in American Spring Bed, supra,

The credibility of witnesses is for the ALJ
to determine, and the reviewing court will
set aside such findings only when he
oversteps the bounds of reason. So long as
the ALJ's position represents a choice
between two fairly conflicting views, it
should be enforced even if this court would
justifiably have made a different choice had
the matter come before it de novo.

670 F.2d at 1242 (citations omitted).

The Petitioners offer no proof that the ALJ's

credibility findings are unreasonable. Thus, we accept the

ALJ's findings that Holyoke requested O'Connell, Inc. not to

refer Bourque because of Holyoke's erroneous belief that

Bourque was assisting the unionized employees in their

protected demonstration; that O'Connell, Inc. willingly

complied with Holyoke's illegal request; and that O'Connell

specifically cautioned Bourque not to involve herself with

the demonstrating Holyoke employees. Once the ALJ's

credibility findings are accepted, there is more than

sufficient evidence to support the Board's ruling that the

Petitioners both violated sections 8(a)(1) and (3) of the

Act.

-14-
14

The final determination set forth by the ALJ and

upheld by the Board relative to the unfair labor practices

is as follows:

The facts noted above, show that Bourque
would have worked at least some of the days
that [Holyoke] used referrals from O'Connell
in the period between February 5, 1991, when
Bourque was released by her doctor, and
February 19, 1991 when she was actually
assigned to [Holyoke]. The question of just
how many days must wait until the compliance
stage of this proceeding.

The Petitioners submit that the above conclusion is

speculative and they set forth testimony that, they argue,

shows that Bourque did not miss any days of work for Holyoke

due to their actions.

To the contrary, the evidence creates an issue as to

how many days, if any, Bourque would have been referred to

Holyoke during the period that the Petitioners prevented her

referral. Bourque testified that her schedule for working

at Holyoke was arranged as far as three months ahead of

time, or as short as the morning of work. In the past, she

had been called the day before and even at 9:00 in the

morning of the day she was to work. Therefore, the Board

did not err in finding that Bourque may be entitled to

backpay and that the amount of backpay owing to Bourque

-15-
15

could be resolved, if necessary, in the compliance

proceeding following enforcement of the Board's order.

This court has approved the same kind of order and

procedure in a similar situation. In NLRB v. Globe Mfg.

Co., 580 F.2d 18, 21-22 (1st Cir. 1978), where an employer

had imposed a discriminatory recall policy on an employee,

this court upheld a Board order leaving to compliance

proceedings the resolution of whether the employee in fact

would have been recalled in the absence of the illegal

policy. The court noted that it could not rule on the

company's claim that the employee was unemployable under the

company's standards, and it refused to prolong the case by

declining enforcement and remanding the case. Id. at 22.

Rather, the court held that the Board's order would be

enforced and the company would be entitled to present its

proofs and seek to disprove both damages and a duty to

reinstate. Id. See also NLRB v. Plumbers & Pipefitters

Local Union No. 403, etc., 710 F.2d 1418, 1420-21 (9th Cir.

1983) (upholding Board order delaying until compliance

proceedings determination of entitlement to, and amount of,

back-pay awards for all possible victims of unfair labor

practices engaged in by union); NLRB v. International Assoc.

of Bridge, etc., 600 F.2d 770, 778 (9th Cir. 1979)

-16-
16

(enforcing Board order calling for back-pay awards even when

identity of all the discriminates was not known), cert.

denied, 445 U.S. 915 (1980).

III.

The record contains substantial evidence to support

the ALJ's findings, adopted by the Board, that the

Petitioners are joint employers of the employees referred by

O'Connell, Inc. to work for Holyoke, and that the

Petitioners committed unfair labor practices under sections

8(a)(1) and (3) of the Act.

Accordingly, the petition for review is denied and

the cross-application for enforcement is granted. Costs

taxed against the Petitioners.

-17-
17