**Nelson L. CHAGNON, on behalf of himself and all others similarly situated**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services.**

Civ. A. No. 79–246.

United States District Court,
D. Vermont.

March 30, 1982.

Neil H. Mickenburg, Mickenburg, Dunn & Dickson, Burlington, Vt., for plaintiffs.

George W.F. Cook, U.S. Atty., Peter W. Hall, Asst. U.S. Atty., Rutland, Vt., for defendant.

MEMORANDUM OF DECISION

HOLDEN, District Judge.

In this certified class action the plaintiffs seek declaratory and injunctive relief from delays they encounter between the time

they are determined eligible for and the time they actually receive disability insurance and/or Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* The certified class consists of

all residents of Vermont who, pursuant to a final decision of the Secretary or a final judgment of a federal court, have been or will be determined eligible for Disability Benefits under Title II and/or Title XVI of the Social Security Act but who do not receive payment of those benefits within a reasonable period of time.

The parties have filed cross-motions for summary judgment on all issues. The plaintiffs contend that the delays in receiving payment after a final determination of eligibility violate the Social Security Act and request the court to direct the Secretary to certify claimants for payment within 20 days after the determination of eligibility, except in unusual cases, when the Secretary may take up to 60 days.[1] The defendant maintains that the Social Security Act does not require payment of benefits within a reasonable period and that, in any event, the payment delays are reasonable. The court heard oral argument and the parties have provided extensive briefs. The facts are undisputed.

## FACTS

Persons are entitled to receive disability insurance benefits under Title II of the Social Security Act if the Secretary finds them disabled within the meaning of the Act and they otherwise qualify for insured status. 42 U.S.C. § 423. To receive SSI benefits under Title XVI, persons must be disabled and within certain income and resource limitations. 42 U.S.C. §§ 1381a–82. This case involves claimants who are ultimately determined eligible for disability benefits after having been found ineligible at the administrative level both initially and after reconsideration. The ultimate findings of eligibility can have three sources:

(1) an administrative law judge (ALJ) may find a claimant eligible after the claimant has exercised his statutory right to a hearing on his claim, 42 U.S.C. §§ 405(b); 1383(c)(1); (2) the Social Security Administration's (SSA) Appeals Council may find a claimant eligible, reversing an ALJ's contrary finding, *see* 20 C.F.R. §§ 404.967–.981 (Title II); 416.1467–.1481 (SSI) (1981); or (3) a United States District Court may reverse the Secretary's final decision of non-eligibility, 42 U.S.C. §§ 405(g); 1383(c)(3).

After an ALJ, the Appeals Council, or a district court finds a claimant eligible for benefits, the SSA is responsible for "effectuating" (computing and processing) payment. According to the stipulated facts, this task consists of different standardized steps, depending on who finally determined a claimant eligible and whether the claimant is to receive Title II or SSI benefits.

### 1. *The Process.*

The procedure for effectuating payment of Title II benefits is essentially the same when an ALJ or the Appeals Council issues a decision favorable to a claimant. If an ALJ makes the decision, the claimant's claim folder is immediately forwarded directly to the Office of Disability Operations (ODO), Division of Benefit Services, in Baltimore, Maryland. The Appeals Council, on the day it makes a favorable decision, forwards the claim folder to the Mail and Messenger Unit of the Office of Hearings and Appeals, where the folder and a copy of the decision are mailed to the ODO. At ODO the claim folder is recorded and sent to the appropriate authorization "component," where the following seven tasks are performed:

a.  Preliminary typing of identifying information on Determination of Award Form SSA–101 and Determination of Disability Form SSA–831;

b.  Claims authorizer adjudicates case and enters entitlement information, computation data and monthly benefit amounts for each entitled beneficiary;

---

1.  The plaintiffs also request the court to order the Secretary not to classify more than 20 percent of all cases as "unusual" and therefore within the 60-day limit.

c. Benefit authorizer summarizes payment for initial retroactive payment and continuing payment debit via Form SSA–2795;

d. Payment summary forms are batched and sent to computer terminal station;

e. Payment summary data is keyed in to the particular computer program system (computer-run date);

f. Computer system transmits payment debit data to a payment transcript tape in the Program Service Center adjacent to the Treasury Disbursing Office, and certifies the tape;

g. Treasury runs tape, issuing and mailing checks.

Stipulated Facts, at 2. If, however, a claim involves "subsidiary issues" such as offsets, overpayments, or simultaneous award of retirement benefits, the claim is taken out of the process described above and referred to "inquiries specialists" or "authorization components" for resolution. The claim then re-enters the process for payment at the stage where it was interrupted.

In Title XVI cases, the ALJ or the Office of Hearings and Appeals (if the Appeals Council made the decision) mails the claim folder to the Reversal Control Unit (RCU) in Boston, Massachusetts. The RCU reviews the folder to see if routine medical reexaminations are warranted, then sends the folder to the appropriate district office (DO). The district office reviews the folder and converts the decision into a "coded format" to put into the computer. When the information is fed into and accepted by the computer, the Treasury Department automatically issues a check. Before introducing the information into the computer, however, the DO may have to contact the claimant to resolve issues not addressed by the ALJ or Appeals Council decision, or to develop the case further if ordered by the ALJ or Council. Similarly, since SSI benefits are need-based, if the ALJ or Appeals Council rules only on disability, the DO may have to adjudicate whether the claimant satisfies the appropriate income and resource limitations. These reviews are called "pre-effectuation unscheduled redeterminations."

When a district court renders a decision reversing the Secretary's final determination of non-eligibility, the respective processes under Title II and Title XVI for effectuating payment are the same as those described above, with a single significant exception. If the Secretary contemplates an appeal of the district court's ruling in a Title II case, 42 U.S.C. § 405(i) expressly permits the Secretary to "withhold certification of payment pending such review." The Secretary has 60 days after the district court decision to file such an appeal. Fed. R.App.P. 4(a)(1). There is no corresponding provision for withholding certification of payment under Title XVI. Nevertheless, the Secretary follows the same procedure after district court rulings favorable to claimants in both Title II and XVI cases. When the Secretary receives a court decision, the decision is first reviewed to decide whether to appeal. The Secretary then sends a recommendation to the Solicitor General, who ultimately decides whether to appeal. If the Solicitor General decides not to appeal, he formally notifies the Secretary so that payment procedures can proceed. As a matter of course in both Title II and Title XVI cases, the Secretary waits a designated period of 60 days before processing claims after a district court decision. Stip. Facts, at 6. In some cases, however, the Secretary waits longer than 60 days, holding up effectuation until receiving formal notification from the Solicitor General that no appeal has been filed. *See* Stip. Facts, at 7. During this delay period, Title II cases proceed through the first two steps of the effectuation process. The record does not indicate whether Title XVI cases proceed through any part of the effectuation process pending the decision whether to appeal.

The Secretary has published a "Claims Manual" which governs administrative processing of SSI claims. The Manual prescribes time limits in which both "redeterminations" and effectuation should be completed:

It is particularly important that this unscheduled redetermination be conducted on a priority and expeditious basis so as not to unduly delay the necessary effectuation action. Every effort must be made to complete the redetermination and effectuation within *20 days after receipt* of the appellate reversal by the regional control point.

Where unusual circumstances prevent effectuation within 20 days, the effectuating action must be completed as soon as possible but no later than 60 days from the *date of the appellate decision.*

Claims Manual, part 13417.2B, Memorandum in Support of Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's Mem."), Appendix O (emphasis in original).

### 2. *The Delays.*

Between January 1, 1978 and June 1, 1979, ALJs and the Appeals Council issued 308 favorable decisions in Title II and Title XVI cases.[2] In a random sample consisting of 25 percent of these decisions (77 actual decisions), claimants waited between 9 and 127 days to receive payment after the favorable decision was rendered. Final Report on Stipulated Discovery, at 1–2 (hereinafter "Final Report"). Out of the 77 claims in the sample, 15 received payment within 20 days, 32 within 30 days, 67 within 60 days, and the remaining 10 between 61 and 127 days.[3] *Id.; see* Plaintiff's Mem., Appendix N. The mean processing times for Title II cases were 43.2 days in 1979 and 43.1 days in 1980; for SSI cases, 45.8 days in 1979 and 36 days in 1980; for concurrent-benefit cases (both Titles II and XVI), 35.6 days in 1979 and 35.7 days in 1980. Final Report, at 1–2.

In 1978–79 there were eight district court decisions reversing the Secretary. The delays between decision and payment in these cases ranged from 62 to 206 days. Four of the eight claimants had to wait longer than 120 days.[4]

There is much in the record to substantiate the obvious fact that claimants forced to undergo lengthy delays before receiving payment often suffer severe hardship, whether they claim under Title II, SSI, or both. The plaintiffs have submitted numerous affidavits of eligible claimants attesting to suffering which accompanied these delays. Plaintiff's Mem., Appendices C–M. Many of these claimants were forced to exist on relatively meager Vermont General Assistance payments, food stamps, and the generosity of friends and neighbors. These individual instances of hardship need not be recounted in detail here, for the courts have uniformly acknowledged the hardships which attend delays in receiving disability insurance and SSI benefits. *E.g., Sharpe v. Harris,* 621 F.2d 530, 531 (2d Cir.1980) (SSI); *Caswell v. Califano,* 583 F.2d 9, 14 (1st Cir.1978) (Title II); *Barnett v. Califano,* 580 F.2d 28, 31–32 (2d Cir.1978) (SSI); *White v. Mathews,* 559 F.2d 852, 859 (2d Cir.1977) *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978) (Title II); *Day v. Schweiker,* No. 78–266, slip op. at 7 (D.Vt. August 19, 1981) (Title II); *cf. Mathews v. Eldridge,* 424 U.S. 319, 342, 96 S.Ct.

**2.** In the Defendant's Memorandum in Support of Motion for Summary Judgment, the Secretary states there were 408 favorable decisions. This is a typographical error.

**3.** A breakdown of the sample delays appears as follows:

| Number of Days | Number of Claimants (Titles II and XVI) |
|---|---|
| Under 20 days | 15 claimants |
| 21–30 days | 17 claimants |
| 31–40 days | 16 claimants |
| 41–50 days | 13 claimants |
| 51–60 days | 6 claimants |
| 61–74 days | 2 claimants |
| 75–90 days | 4 claimants |
| 90–plus days | 4 claimants |

Plaintiff's Mem., Appendix N.

**4.** The delays in both Title II and Title XVI cases after court reversals in each of the eight cases were, in number of days: 62, 79, 110, 115, 125, 143, 168, and 206. Defendant's Supplemental Answers to Plaintiffs' Interrogatories—Set I (filed May 6, 1980). These delays include only the time to "computer run" to pay benefits. *Id.* Some of these claimants had to wait longer to receive their retroactive benefits; some re-

893, 906, 47 L.Ed.2d 18 (1976) (noting that, given "the typically modest resources of the family unit of the physically disabled worker, the hardship imposed upon the erroneously terminated disability recipient may be significant"). Similarly, this court finds that eligible claimants endure serious hardships during the period in which they must wait for benefits to which they are entitled.

## DISCUSSION

■ The parties disagree in two respects: first, over whether the Secretary is required to pay benefits within a reasonable time; and second, over whether the delays in this case are reasonable. The Court of Appeals for the Second Circuit has already resolved the first point. In *Sharpe v. Harris, supra,* 621 F.2d at 532, a *per curiam* opinion, the court concluded that "[t]he district court properly held that Title XVI of the Act contemplates that payments shall commence within a reasonable time after a favorable decision. See 42 U.S.C. §§ 1381a, 1383(a)(1), 1383(c)(1)." [5] *See also Holcomb v. Califano,* No. 75–288, slip op. at 13 (D.Vt. Feb. 26, 1979). Although *Sharpe* addressed only SSI benefits, a similar conclusion is compelled for Title II. Like Title XVI, Title II requires the Secretary to hold hearings within a reasonable time. 42 U.S.C. § 405(b). It is now well settled that claimants are entitled to interim benefits if such hearings are unreasonably delayed. *White v. Mathews, supra,* 559 F.2d at 860–61. *See also Day v. Schweiker, supra,* slip op. at 9–10. The district court in *Sharpe* concluded, in the context of Title XVI, that "[i]f, as in *White* [and] *Barnett,* ... claimants are entitled to interim benefits when decisions are unreasonably withheld, then the right to reasonably prompt payment after a favorable decision follows *a fortiori.*" *Sharpe v. Califano,* No. 79 Civ. 1977–CSH, slip op. at 16 (S.D.N.Y. Aug. 6, 1979), *aff'd,* 621 F.2d 530 (2d Cir.1980). The same reasoning applies with respect to Title II. Moreover, in enacting Title II,

> Congress intended to give a disabled worker a ready source of support, financed in part by a tax in the past on his own earnings. The statute was intended to make it unnecessary for an eligible worker to resort to the sometimes demeaning procedure of asking for local relief ....

*White v. Mathews, supra,* 559 F.2d at 860 (footnote omitted). Failure to pay benefits to eligible claimants within a reasonable time plainly conflicts with this purpose. The court accordingly holds that the Secretary must pay benefits within a reasonable time after a claimant is determined eligible under either Title II or Title XVI.

The question remains what is a reasonable time under the circumstances. The plaintiffs urge the court to impose a 20-day limit except in unusual cases. They derive the proposed limit from the portion of the SSA Claims Manual quoted above. The defendants, on the other hand, contend that the time limits, on the whole, are reasonable and improving.

The record reflects a wide disparity in the times claimants must wait to receive their entitlements. Several claimants in the sample before the court were forced to wait far longer than 60 days, the Secretary's self-imposed limit for SSI cases. The Secretary offers no justifications for these delays. Nor does he dispute the plaintiffs' allegations that the delays often result from administrative inefficiency and ineptitude. On the other hand, effectuating payment may involve issues which require further review of the claimant's file, in addition to completing appropriate forms, computing proper payment levels, and successfully entering the completed information

ceived retroactive benefits first and had to wait longer to receive monthly benefits. *Id.*

**5.** The Secretary asserts that *Sharpe* was limited by the later United States Supreme Court decision in *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). *Hansen*

held only that the Claims Manual does not carry the force of law. This in no way undercuts *Sharpe's* holding that the Social Security Act mandates payment within a reasonable time.

into the computer. The court must permit the Secretary a reasonable time to perform all of these tasks accurately and to retain enough flexibility to process complex cases and to account for unavoidable delays or other exigencies that may arise in particular cases.

The court is cognizant of both the need for prompt administrative action on disability claims and the Secretary's interest in ensuring that payments are accurate. *Cf. Day v. Schweiker, supra,* slip op. at 7 (weighing individual right to prompt hearing against the Secretary's desire to perform an adequate review of initial determinations of ineligibility). The Secretary has undertaken to balance the same conflicting goals and has decided that, for SSI claims, effectuation should occur within 20 days, and must occur within 60 days of an appellate decision. According to the plaintiffs, it is administratively feasible to process claims within 20 days and this court should therefore make the Secretary's 20-day goal mandatory. The court is unwilling, based on the record in this case, to impose such a stringent time-limit on the Secretary. The Manual's 20-day provision is a goal, not a hard and fast rule. The factors which render a case "unusual" within the language of the Manual are not settled in the present record. The analysis and decision of necessity must be made on a case-by-case basis which is confided to the Secretary and must remain with the administrative agency.

■ While the Claims Manual speaks in mandatory terms, it must be recognized its promulgation is not necessarily a burden on the Secretary in all of its aspects. It is primarily a directive for the conduct of the complex administrative procedures that are required to carry out the design and purpose of the Act. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). It is highly relevant on the issue of what constitutes a reasonable

time for effectuation. Bearing on this point, it is regarded as stating a positive capability to achieve the essential step of computing and processing payment of entitlement within the time prescribed by the Manual. The 60-day limit clearly indicates that the Secretary did not believe it would always be feasible to effectuate payment within 20 days. This determination by the agency "to which Congress [has] confided the responsibility for substantive judgments" deserves proper deference. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978); *Day v. Schweiker, supra,* slip op. at 7. The court finds nothing in the record to indicate that the Secretary's judgment is unreasonable.[6] *See also Sharpe v. Califano, supra,* No. 79 Civ. 1977–CSH, slip op. at 21–22. Moreover, the Claims Manual limitations seem equally relevant to Title II cases, which apparently require less administrative attention in the effectuation process than Title XVI cases. The two processes are sufficiently alike, however, to apply the Claims Manual timing provisions analogously to Title II cases. The court therefore concludes that delays up to 60 days after favorable ALJ or Appeals Council decisions are, under the circumstances, reasonable and permissible under the Social Security Act.

The situation following favorable district court decisions is somewhat different. Since Congress expressly authorized the Secretary to withhold payment pending a decision whether to appeal Title II cases, and since the federal rules provide 60 days within which to make this decision, the court is required to permit the Secretary 60 extra days to effectuate payment after a favorable court ruling in a Title II case. Although the court is unable to find a statutory predicate authorizing similar delays in Title XVI cases, the SSA applies the same rule and the plaintiffs apparently con-

---

**6.** Although *Schweiker v. Hansen, supra,* holds that the Claims Manual does not carry the independent force of law, this does not prohibit this court from looking to the Manual for guidance in determining what is a reasonable time period.

cede this is reasonable. Plaintiff's Mem. at 36. The court will accordingly afford the Secretary 60 extra days to effectuate payment after a favorable court ruling in either Title II or Title XVI cases, making 120 days a reasonable time in which to effectuate payment after a court review that is not further appealed.[7]

Finally, delays beyond 60 or 120 days may be reasonable if the claimant causes the delay. The court will therefore limit its order to cases in which delays in the effectuation process are not derived from action properly attributed to the claimant.

In keeping with these conclusions, the court will impose a 60-day time limit on the time for effectuation of payments under Titles II and XVI after decisions by ALJs or the Appeals Council finding claimants eligible for benefits, and a 120-day time limit on effectuations after court decisions reversing the Secretary. These time limits will not apply in cases in which delays are reasonably attributable to the claimant. This ruling shall apply both to prospective and retroactive benefits.

The court will direct that judgment be entered 30 days from the filing and service of a copy of this order on counsel of record. The parties may apply for leave to be heard on the settlement of the final judgment order.

It is so ORDERED.

---

**7.** Although the Secretary performs some effectuation tasks during the pendency of a decision whether to appeal, the court concludes it would unduly complicate the administrative procedures to require the Secretary to process district court reversal cases in less than 60 days after the time for appeal has passed.