Carl VITO et al.

v.

**DEPARTMENT OF ENVIRONMENTAL MANAGEMENT.**

Ralph MUCCI et al.

v.

**DEPARTMENT OF ENVIRONMENTAL MANAGEMENT.**

No. 89–343–Appeal.

Supreme Court of Rhode Island.

April 11, 1991.

John B. Webster, Michael A. Kelly and Patricia Rocha, Adler, Pollock & Sheehan, Inc., Providence, for plaintiffs.

Stephen H. Burke, D.E.M., for defendant.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the Department of Environmental Management's appeal from an order of the Superior Court requiring it to schedule and conduct a freshwater-wetlands public hearing within ninety days of a denied applicant's request for one. We affirm.

An understanding of the administrative procedures of the Department of Environmental Management (DEM) will help to

clarify the issue before us. The Rhode Island Freshwater Wetlands Act (Wetlands Act), G.L.1956 (1987 Reenactment) § 2-1-18 through § 2-1-27, gives the director of DEM responsibility for identifying, protecting, and regulating development within Rhode Island's freshwater wetlands. Section 2-1-20.1 empowers the director to promulgate rules and regulations (Regulations) to carry out the purposes of the Wetlands Act. Section 2-1-22, as amended by P.L.1988, ch. 415, § 1 provides that a property owner may request DEM to make a preliminary determination of whether the Wetlands Act applies to a proposed land use. This initial determination is made by DEM's Division of Groundwater and Freshwater Wetlands (Wetlands Division).[1]

If the Wetlands Division determines that the Wetlands Act applies because the proposed land use would significantly alter freshwater wetlands, the applicant is notified that the proposed land use may not proceed unless the applicant requests and receives a DEM permit to alter freshwater wetlands (permit). An applicant's request for a permit is reviewed by the Wetlands Division, with public notice and opportunity for comment.

If it is determined that an applicant's proposed land use would require alterations of freshwater wetlands that are inconsistent with the purposes of the Wetlands Act, the application for a permit is denied. The DEM Regulation 5.04 provides that a denied applicant, who has not previously had a public hearing pursuant to § 2-1-22(b), may, within ten days of receipt of the denial, request a public hearing during which the denied applicant may attempt to demonstrate that the Wetlands Division's decision to deny the permit was incorrect. The final DEM decision following this public hearing is reviewable on appeal by the Superior Court pursuant to G.L.1956 (1988 Reenactment) § 42-35-15 of the Rhode Island Administrative Procedures Act (APA).

The matter before us arose as a result of DEM's administrative delay in scheduling and conducting freshwater-wetlands public hearings upon request by two groups of denied applicants.

On or about September 11, 1987, Ralph Mucci and Robert Poland, who own real estate situated in Foster, filed a request for a preliminary determination of whether the Wetlands Act was applicable to their proposed construction of a gravel driveway designed to gain access to two proposed residences. The Wetlands Division determined that because the proposed construction would significantly alter freshwater wetlands, a permit would be required. Thereafter, on January 25, 1988, Mucci and Poland filed a formal permit application with the Wetlands Division. The Wetlands Division denied their permit application on November 3, 1988, finding that the proposed construction altered freshwater wetlands in a manner inconsistent with the purpose of the Wetlands Act. Thereafter, on November 14, 1988, Mucci and Poland requested a freshwater-wetlands public hearing on their denied application.

Carl Vito and Richard Dufault, whose purchase of real estate situated in Cumberland from James and Louis Turner was conditioned upon the approval of DEM for anticipated construction, followed a course substantially similar to that of Mucci and Poland. On March 1, 1988, Vito and Dufault filed a request with the Wetlands Division for a preliminary determination of whether the Wetlands Act was applicable to their proposed construction of two single family residences on the real estate. The Wetlands Division determined that because the proposed construction would significantly alter freshwater wetlands, a permit would be required. Thereafter, on June 30, 1988, Vito and Dufault filed a formal permit application with the Wetlands Division. The Wetlands Division denied their permit application on December 15, 1988, finding that the proposed construction altered freshwater wetlands in a manner inconsist-

---

1. The Division of Groundwater and Freshwater Wetlands is referred to in the Regulations by its former title, the Fresh Water Wetlands Section.

ent with the purposes of the Wetlands Act. Thereafter, on December 27, 1988, Vito and Dufault requested a freshwater-wetlands public hearing on the denied application.

On January 25, 1989, Mucci and Poland filed a petition for a writ of mandamus and a complaint for injunctive and declaratory relief and damages, requesting that the Superior Court order DEM to schedule and conduct a freshwater-wetlands public hearing on their denied permit application. Similarly, on February 6, 1989, Vito, Dufault, and the Turners filed a petition and complaint, requesting that the Superior Court order DEM to schedule and conduct a freshwater-wetlands public hearing on their denied permit application.

The petitions of the two groups were consolidated. The Superior Court heard argument on June 9, 1989, and held evidentiary hearings on June 16, 1989, and June 19, 1989. At the evidentiary hearings, the trial justice heard testimony from Stephen G. Morin (Morin), chief of the Wetlands Division, and other DEM officials concerning DEM's administrative procedures for holding a freshwater-wetlands public hearing upon a denied applicant's request for one. Morin testified that when a freshwater-wetlands-public hearing request is made by a denied applicant, the applicant's name is placed at the bottom of a list maintained by the Wetlands Division. A hearing officer is designated by the director to hold a freshwater-wetlands public hearing when the denied applicant's name is eventually reached according to chronological order. Prehearing conferences are sometimes conducted to promote settlement by the parties prior to a freshwater-wetlands public hearing. Absent settlement, a freshwater-wetlands public hearing is scheduled and conducted, for which DEM provides a hearing officer and at which the Wetlands Division is represented by counsel from DEM's Office of Legal Services.

The DEM witnesses candidly testified to the administrative delay in scheduling and conducting public hearings in general and freshwater-wetlands public hearings in particular. At the time of the evidentiary hearings in June 1989, approximately thirty-five denied applicants were waiting for freshwater-wetlands public hearings, one since 1985, according to DEM records. The DEM also admitted that neither of the Mucci/Poland or Vito/Dufault freshwater-wetlands public hearings had been scheduled as of the time of the evidentiary hearings. Thus Mucci and Poland had been waiting approximately seven months and Vito and Dufault approximately six months for freshwater-wetlands public hearings since their requests for one. The DEM's administrative delay in scheduling and conducting freshwater-wetlands public hearings was explained in part by the difficulty in locating hearing sites, problems on the part of DEM's legal counsel in finding the time to act either as the hearing officer or as counsel to the Wetlands Division, and revised plans being submitted by denied applicants as settlement offers, which require review by the staff of the Wetlands Division.

The DEM witnesses testified to the remedial steps taken to reduce the administrative delay in scheduling and conducting freshwater-wetlands public hearings. Part-time outside counsel had been retained to act as hearing officers specifically for freshwater-wetlands public hearings. The Wetlands Division also instituted changes in the divisionwide hearing process to increase the number of disputes settled or reached within eight-week rotation periods. Finally the Wetlands Division reorganized its permit-application process and the permit application itself to streamline the division's decision-making process.

Relying upon the evidence, the trial justice found that *all* freshwater-wetlands public hearings must be scheduled and conducted within a reasonable time after a denied applicant's request for one, which the trial justice determined to be ninety days. The trial justice entered a June 21, 1989 order requiring DEM to submit a freshwater-wetlands public hearing schedule that would eliminate the backlog of denied applicants and, within six months, allow DEM to schedule and conduct all freshwater-wetlands public hearings within ninety days of denied applicants' request for one. The trial justice deferred ruling

on the consolidated petitions for a writ of mandamus until July 21, 1989, at which time he indicated he would make a determination whether DEM was successfully working toward implementing his order to reduce the administrative delay in scheduling and conducting freshwater-wetlands public hearings. However, the trial justice indicated that he thought it would be inequitable for the petitioners to receive their freshwater-wetlands public hearings before the other denied applicants ahead of them on the Wetlands Division's waiting list.

On July 18, 1989, the trial court stayed its June 21, 1989 order to allow DEM to prosecute this appeal, which was filed with this court on June 30, 1989. However, on September 28, 1989, this court vacated the stay of the June 21, 1989 order and agreed to expedite review of this matter. To that end, on November 29, 1989, after conference pursuant to Supreme Court Rule 16(h), this court assigned the case for full briefing and argument on a single issue agreed upon by the parties: whether the trial justice properly held that due process requires DEM to schedule and conduct all freshwater-wetlands public hearings within ninety days of denied applicants' requests for one.

In the hearing below, the trial justice rendered his decision orally from the bench and then entered an order. As we read the transcript of the decision and the order, we see that certain propositions not stated as findings are implicit. The first is that DEM must schedule and conduct freshwater-wetlands public hearings within a reasonable time upon denied applicants' request for one; second, that DEM's administrative procedures deprived denied applicants of due process because of DEM's failure to schedule and conduct freshwater-wetlands public hearings within a reasonable time upon denied applicants' request for one; and third, that due process requires DEM to schedule and conduct all freshwater-wetlands public hearings within ninety days of denied applicants' request for one.

The standard of review employed by this court in reviewing the findings of a trial justice is well settled. We have stated that:

> "the findings of the trial judge will be given great weight on appeal and will not be disturbed unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked relevant evidence on a crucial issue." *Fournier v. Fournier*, 479 A.2d 708, 715 (R.I.1984).

We first review the proposition that DEM must schedule and conduct freshwater-wetlands public hearings within a reasonable time upon denied applicants' request for one. The parties agree that DEM Regulation 5.04 and § 42–35–9 of the APA provide a denied applicant the right to a freshwater-wetlands public hearing upon request. Regulation 5.04 states:

> "Appeal of Director's Decision—
>
> In cases of full or partial denial where no public hearing was required under the provisions of Section 2–1–22 of the [Wetlands] Act, the applicant * * * will be sent the decision by first class mail. The decision will state explicitly the reasons for denial. *The applicant may within 10 days of the receipt of the decision, request in writing a [freshwater wetlands] public hearing * * * to appeal the decision.* Such a hearing will be conducted under the procedures set forth in Section 2–1–22 of the [Wetlands] Act and Section 11.02 herein." (Emphasis added.)

Section 42–35–9(a) of the APA, which governs administrative procedures for a contested public hearing, also provides that "all parties shall be afforded an opportunity for hearing after reasonable notice."

Unfortunately, DEM Regulation 5.04 and § 42–35–9 of the APA are silent about when freshwater-wetlands public hearings must be scheduled and conducted. However, the trial justice found the language in § 2–1–22(b) to be instructive on this issue. Section 2–1–22(b) provides in relevant part:

> "If the director receives any objection to the project within forty-five (45) days of the mailing of the notice of application from his office * * * the director *shall then* schedule a public hearing in an ap-

propriate place as convenient as reasonably possible to the site of the proposed project." (Emphasis added.)

Relying upon the language in DEM Regulation 5.04 that specifies freshwater-wetlands public hearings are to be conducted under the procedures set forth in § 2–1–22, the trial justice determined that the "shall then" language in § 2–1–22(b) applies to DEM's obligation to schedule and conduct freshwater-wetlands public hearings under DEM Regulation 5.04. The trial justice interpreted the "shall then" language in § 2–1–22(b) to require DEM to "do something forthwith" or to "do something immediately." Thus the trial justice found that § 2–1–22(b) required DEM to schedule and conduct a freshwater-wetlands public hearing within a *reasonable time* of a denied applicant's request for one.

■ We have no reason to conclude that the trial justice was clearly wrong or misconceived or overlooked relevant evidence in finding that DEM must schedule and conduct a freshwater-wetlands public hearing within a reasonable time of a denied applicant's request for one. His finding that the "shall then" language in § 2–1–22(b) applies to DEM's obligation to schedule and conduct freshwater-wetlands public hearings is entirely consistent with the wording of DEM Regulation 5.04. In addition, the trial justice's interpretation of the "shall then" language in § 2–1–22(b) as requiring DEM to schedule and conduct a freshwater-wetlands public hearing within a reasonable time upon a denied applicant's request for one is a reasonable statutory construction. Moreover, the trial justice's finding is in accord with the general rule of administrative procedure under which, absent a specific time frame, public hearings must be held within a reasonable time. *See Wright v. Califano*, 587 F.2d 345, 351 (7th Cir.1978); *Caswell v. Califano*, 583 F.2d 9, 15 (1st Cir.1978); *see, e.g.*, 73A *Corpus Juris Secundum*, § 137 at 79 n. 42 (1983).

■ We next address the proposition that DEM deprived denied applicants of due process by failing to schedule and conduct freshwater-wetlands public hearings within a reasonable time. The evidence presented at the evidentiary hearings in June 1989 demonstrated that denied applicants were forced to wait a very significant time for freshwater-wetlands public hearings. At the time of the evidentiary hearings, approximately thirty-five denied applicants were waiting for freshwater-wetlands public hearings, one since 1985. Evidence was also introduced that despite this backlog of denied applicants, DEM hearing officers maintained an informal policy of hearing only one case per month. Furthermore, Chief Morin of the Wetlands Division conceded that even this minimal informal policy of hearing one case per month was not followed. In the two-year period from July 1987 to June 1989 only seven freshwater-wetlands public hearings were scheduled and conducted.

The DEM admitted that denied applicants were forced to wait a substantial time for freshwater-wetlands public hearings. However, DEM argued that this administrative delay was not unreasonable in view of its available fiscal and personnel resources. Morin testified that he felt a reasonable time was whatever time DEM required to schedule and conduct freshwater-wetlands public hearings. After a review of the record, we are persuaded that the trial justice was fully justified and did not misconceive or overlook relevant evidence in concluding that DEM deprived denied applicants of due process by failing to schedule freshwater-wetlands public hearings within a reasonable time upon their requests for one.

■ The resolution of whether an agency's administrative procedures comports with due process requires a balance of the relevant private and governmental interests. *John J. Orr & Sons, Inc. v. Waite*, 479 A.2d 721, 723 (R.I.1984) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976)). In the matter before us, we must balance the denied applicants' private interest in developing their property against DEM's governmental interest in protecting Rhode Island's freshwater wetlands. We believe that in the circumstances of this case the private interest outweighs the countervail-

ing governmental interest. The most significant factor in this balance weighing in favor of the private interest is DEM's administrative delay in scheduling and conducting the public hearings. The evidence presented demonstrates that denied applicants encountered significant administrative delay in waiting for freshwater-wetlands public hearings, many in excess of one year. Delay in administrative proceedings is an important factor in assessing the sufficiency of an agency's process. *See Wright v. Califano,* 587 F.2d at 354. We find that the administrative delay suffered by denied applicants is unreasonable and denies them an opportunity to be heard at a meaningful time.

We recognize that DEM has a legitimate governmental interest in exercising its discretion to allocate its resources to protect Rhode Island's freshwater wetlands. However, this discretion is not absolute when the conflicting rights of members of the public are involved. We find the reasoning of the First Circuit in *Caswell* very compelling:

> "the [Director] has substantial discretion in the scheduling of hearings and that courts must normally defer to agency judgment to allow the evolution of procedures as needs arise. * * * Yet equally clear is the [Director's] statutory [and due process] duty to provide a hearing at a meaningful and reasonable time. * * * *His discretion would not encompass a system which routinely * * * schedules hearings at unreasonably distant times.*" (Emphasis added.) 583 F.2d at 15.

Moreover, it is in DEM's own best interest to avoid administrative delay in scheduling and conducting freshwater-wetlands public hearings. The DEM witnesses testified that scheduling a freshwater-wetlands public hearing soon after a denied applicant's request for one would in many instances avoid the costly and time consuming second analysis of the proposed construction by DEM biologists and engineers that is sometimes necessitated by DEM's administrative delay.

Finally, we address the trial justice's finding that due process requires DEM to schedule and conduct a freshwater-wetlands public hearing within ninety days of a denied applicant's request for one. The DEM acknowledges that in an appropriate case administrative delay may be so egregious as to warrant court-ordered public hearings. *See Washington Highway Development, Inc. v. Bendick,* 576 A.2d 115, 117 n. 1 (R.I.1990). However, DEM argues that in the matter before us the trial justice's order improperly imposed an additional procedural requirement on DEM by mandating that *all* freshwater-wetlands public hearings be scheduled and conducted within ninety days of denied applicants' request for one. The DEM also argues that the trial justice failed to consider adequately DEM's ability to allocate its resources to comply with the trial justice's order to schedule and conduct all freshwater wetlands public hearings within ninety days of denied applicants' request for one. The DEM contends that such an encompassing order is contradictory to the flexible nature of due process, and it cites for support language in *Barber v. Exeter–West Greenwich School Committee,* 418 A.2d 13 (R.I. 1980). In that case we stated that "[d]ue process is a flexible concept and the degree of protection afforded to an individual may vary with the particular situation." *Id.* at 20.

On our review of the record the trial justice was not clearly wrong, nor did he misconceive or overlook relevant evidence in finding that due process requires DEM to schedule and conduct freshwater wetlands public hearings within ninety days of denied applicants' request for one. We recognize that administrative agencies must have a reasonable opportunity and discretion to meet the needs of the agency when they arise, *Richardson v. Wright,* 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151, *reh. denied,* 405 U.S. 1033, 92 S.Ct. 1274, 31 L.Ed.2d 490 (1972), and that the passage of time alone is usually insufficient to warrant judicial intervention in an agency's administrative procedure, *F.T.C. v. J. Weingarten, Inc.,* 336 F.2d 687, 691 (5th Cir.1964). However, these general rules of

administrative procedure will not be allowed to impede our responsibility to ensure that denied applicants receive due process.

We disagree with DEM's contention that the trial justice improperly imposed an additional procedural requirement on DEM by ordering that all freshwater-wetlands public hearings be scheduled and conducted within ninety days of denied applicants' request for one. His order was not an additional procedural requirement imposed on DEM. Rather the order represented a meaningful remedy designed to give substance to a denied applicant's existing right to a freshwater-wetlands public hearing within a reasonable time. *See Caswell v. Califano*, 583 F.2d at 17. This type of judicially imposed administrative deadline for public hearings has been used by many courts to remedy administrative delay. *See, e.g., Barnett v. Califano*, 580 F.2d 28 (2d Cir.1978); *White v. Mathews*, 559 F.2d 852 (2d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Nader v. FCC*, 520 F.2d 182 (D.C.Cir.1975).

We also disagree with DEM's assertion that the trial justice failed to consider adequately DEM's ability to allocate its resources to comply with the trial justice's order that all freshwater-wetlands public hearings be scheduled and conducted within ninety days of denied applicants' request for one. The trial justice was thorough in his examination of DEM's administrative procedures for scheduling and conducting freshwater-wetlands public hearings. He heard evidence concerning DEM's administrative delay and its causes, the resources available to DEM to remedy this delay (including the availability of additional hearing officers), and the remedial steps already instituted by DEM to streamline the permit-application process and the permit application itself. It is clear that he considered all these factors and arrived at a reasonable and responsible conclusion. That conclusion merits the approval of this court.

For these reasons the appeal of DEM is denied and dismissed, the order appealed from is affirmed, and the papers of this case are remanded to the Superior Court.