DECISION
This is an appeal from a December 26, 1990 Final Agency Decision and Order (Order) of the DEM denying appellant's application to alter freshwater wetlands. The appeal was timely filed on January 11, 1991. Jurisdiction in this court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
This matter originally involved an application of Peter L. Ryan to alter freshwater wetlands on a parcel of property located in Jamestown. David Emond and his wife, Teresa, own the property in question. Tr. at 4. Ryan was the engineer they hired to design a site plan for the property. Id.
The Emonds bought the property in 1984 for the purpose of building a single-family home. Tr.. at 21-22. A small structure, approximately fifteen by thirty feet, stood on the property when the Emonds purchased the land. Tr. at 22. They subsequently removed that structure. Tr. at 23.
Ryan's engineering firm determined that wetlands existed on the property. On November 1, 1988 a formal application to alter those wetlands was filed with the DEM. On March 13, 1990, that application was denied. Ryan then filed a request for hearing with the Department's Administrative Adjudication Division. The Division held hearings on August 6, 7, 8 and 9, receiving evidence through testimony and public comment.
The parties stipulated to the following seven issues to be resolved by the hearing officer:
 1) Whether the subject wetland is a "valuable" wetland pursuant to the definition provided in Section 7.06(b) of the Rules and Regulations.[1]
 2) Whether the proposed alterations will result in loss, encroachment, and permanent alteration of wetland wildlife habitat associated with the subject wetland area.
 3) Whether the proposed alterations will reduce the value of "valuable" recreational environment.
 4) Whether the proposed alterations will reduce and negatively impact the aesthetic and natural character of the undeveloped wetland and adjacent areas which serve as a buffer zone.
 5) Whether the proposed alterations will cause undesirable destruction of freshwater wetlands pursuant to Section 5.03(c) (2) and (c) (7) of the Rules and Regulations.
 6) Whether the proposed alterations will reduce the ability of the wetland to moderate the damaging effects of flood flows.
 7) Whether the proposed alterations are inconsistent with the policies, intents, and purposes of the Act and the Rules and Regulations.
The Emonds offered three witnesses at the hearing. David Emond testified briefly concerning his date of purchase of the property and his intended use. Mr. Emond stated that he intended to construct a single family dwelling on the property when he purchased the land in 1984.
Gerald Narkiewicz, a civil engineer registered in Rhode Island and Massachusetts, next testified for the Emonds. Mr. Narkiewicz, while not the original engineer on the project, had studied the property and performed a variety of calculations concerning the project. He testified that the total increased runoff for the site would be approximately .02 cubic feet per second, not a significant amount in his opinion.
Four citizens appeared under public comment and stated their opinion of the proposed alteration. Michael Smith argued that the application should have been granted in light of the fact that the DEM had previously granted applications in this area. Tr. at 6164. The next three citizens all voiced their disapproval of the proposed alteration, stating that further disturbance would worsen the existing drainage problems in the area. Tr. at 88-103.
The Emonds next presented the testimony of Kevin Fetzer, a biological consultant who was qualified as an expert. Tr. at 122. Mr. Fetzer's testimony was extensive, covering almost one hundred and fifty transcript pages. He stated his conclusions with respect to the property at issue, often disputing the conclusions reached by the DEM. Mr. Fetzer concluded that the proposed alterations' negative impact on the wildlife and vegetation on the property would not be significant. Tr. at 213. Mr. Fetzer also testified at length concerning the similarities between the subject property and the neighboring property, owned by Louie and Elise Geddes. Tr. at 185-203.
The DEM then began presenting its witnesses, offering first the testimony of Carl Ruggieri, a senior Natural Resources Specialist employed by the Department. In addition to responding to Mr. Fetzer's contentions concerning the proposed use, Mr. Ruggieri testified as to the specific detrimental impact that the proposed construction would have in the wetlands. He disputed Mr. Fetzer's conclusions on several issues, including the negative impact that the proposed use would have on the wildlife specifies and vegetation at the site.
The DEM next offered the testimony of Dean Albro, the Deputy Chief of the Groundwater and Freshwater Wetlands Division of the Department. Mr. Albro was qualified as an expert in wetland ecology, wildlife habitat, and environmental impact assessment. Mr. Albro testified that denial of the application was proper given the threatened loss of wildlife habitat and the negative effect on the land's ability to handle flood flows. Tr. at 390.
On December 7, 1990, the Hearing Officer issued a decision denying the Emond's application. The decision provided an extensive review of the evidence received at the hearing. In addition, the decision contained detailed findings of fact and conclusions of law. Each of the seven issues stipulated to prior to the hearing was resolved in favor of the DEM. The Director of the DEM adopted the hearing officer's decision on December 26, 1990. On January 11, 1991, the Emonds filed the instant appeal.
Standard of Review
The review of a decision of the DEM by this court is controlled by R.I.G.L. § 42-35-15 (g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error or law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
Review of the DEM Decision
Appellants argue that the decision of the hearing officer was arbitrary and capricious and should therefore be rejected by this court. Appellants contend that the hearing officer improperly disregarded three distinct arguments in making his determination. Specifically, the Emonds claim that the hearing officer "ignored" important evidence including prior DEM "precedent," testimony of the appellants' experts, and the zoning designation of the property in question.
This court is vested with the power to reverse or modify agency decisions that are arbitrary and capricious. G.L. §42-35-15(g)(6). This power, however, must be balanced against the substantial deference due agency hearing officer decisions. SeeEnvironmental Scientific Corp. v. Durfee, 621 A.2d 200, 207-08 (R.I. 1993). Under Environmental Scientific, the hearing officer is viewed as sitting at the mouth of "a funnel-like system" set up by the Legislature to evaluate wetlands-related disputes. Id.
at 207. As a result, before disturbing his factual determinations, the reviewing court must find that the factfinder was clearly wrong. Id. at 206.[2]
Appellants' first argument rests on a paragraph quoted from the Rhode Island Regulatory Reporter. The appellants note that this paragraph extols the virtues of precedential authority in the DEM's performance of its designated function. As a result, appellants argue, the decision concerning the Geddes' application is binding on the DEM in reviewing the application involved in the instant case.
A closer reading of the entire authority from which the paragraph is extracted finds appellants' reliance on it to be misplaced. The review reveals that the quoted text concerns the issue of consistency in the DEM interpretation of its rules and regulations. The point of the decision is that the standards applied by the DEM must remain uniform. There is absolutely no support in the cited authority for the proposition that decisions concerning one applicant are binding upon another.
Furthermore, there are a number of factors that the DEM is required to take into account when reviewing applications to alter wetlands. See DEM Rules 5.03 and 7.02-7.06; see also J.M.Mills, Inc v. Murphy, 116 R.I. 54, 63-64, 352 A.2d 661, 666 (1976) (authorizing case-by-case review of wetlands applications). There is therefore no requirement that the hearing officer be bound by previous DEM decisions granting or denying applications to alter wetlands. The agency's failure to consider those decisions cannot therefore be said to be arbitrary or capricious.
Appellants also contend that the hearing officer improperly rejected uncontradicted testimony. Appellants cite Hughes v. SacoCasting, 443 A.2d 1264 (R.I. 1982) for the proposition that a judge or one acting in a quasi-judicial capacity may only reject uncontradicted testimony in certain situations. The necessary prerequisite, however, is that the testimony be "uncontradicted." That is not the situation in this case.
The court notes that the testimony of Mr. Narkiewicz and Mr. Fetzer was contradicted by Mr. Ruggieri and Mr. Albro. Essentially, the Hearing Officer was faced with a "battle of the experts" and he made a credibility-based determination in reaching his final conclusion. Upon review of the record and in light of Environmental Scientific, the court declines to disturb that conclusion. See Lowry v. Faraone, 500 A.2d 950, 952 (R.I. 1985) (upholding factfinder's decision in spite of conflicting expert testimony where finding not clearly erroneous); Cunninghamv. Marcello, 106 R.I. 400, 404, 260 A.2d 451, 453 (1970) (same).
Appellants' final argument on this first claim of error involves the zoning designation for the property. Appellants essentially contend that denying them permission to alter the wetlands and erect a single-family dwelling constitutes an overriding of the zoning legislation. This argument is without merit.
In relying on the property's zoning designation to argue that the application should have been granted, appellants overlook the fact that zoning and wetlands-related issues involve separate and distinct inquiries. This distinct nature is readily apparent from even a cursory review of the relevant statutes and regulations.Compare G.L. § 45-24-30 (1994 Cum Supp.) (enumerating factors to be considered in zoning context); with DEM Rules 5.03 and 7.02-7.06 (setting forth criteria for DEM wetlands-related inquiries). Furthermore, were zoning classifications controlling in the present dispute, there would be no need for the legislature to empower the DEM to resolve issues of this kind. This would require the court to construe the statutes creating that power as having no purpose, an absurd result. See Cocchiniv. City of Providence, 479 A.2d 108, 111 (R.I. 1984) (court should not interpret statute in a manner rendering it devoid of any purpose).
Regulatory Taking
Appellants argue that the actions of the DEM constitute a taking under the Fifth Amendment to the United States Constitution and Article I, § 16 of the Rhode Island Constitution. They rely heavily on Lucas v. South CarolinaCoastal Council, 112 S.Ct. 2882 (1992) and Annicelli v. Town ofSouth Kingston, 463 A.2d 133 (R.I. 1983) for the proposition that a landowner whose land is deprived of all economically viable use is entitled to compensation.
In its purest form, the takings clause requires government to pay compensation when it physically takes possession of property under its eminent domain power. Want, Law of Wetlands Regulation,
§ 10.01 (1995). In the wetlands regulatory context, the government does not take physical possession of the property, but may restrict profitable use of property to such a degree that the owner argues his property has been effectively taken away. Id.
The Lucas Court acknowledged that its holding was limited to the "relatively rare situations" where "no productive or economically beneficial use of loan is permitted." Id. at 2894 (emphasis in original). Similarly, the Annicelli court awarded compensation because it found that "all reasonable or beneficial use of [the] property ha[d] been rendered an impossibility." Id.
at 140. Therefore a party must make this showing in order to bring their claim within the ambit of these cases.
The appellants have not met this burden. A finding that alternative economic uses exist is implicit in the hearing officer's determination that the subject property constituted a "valuable recreational environment." Compare State v. A. CapuanoBros, Inc., 120 R.I. 58, 65 n. 10, 384 A.2d 610, 615 n. 10 (1978) (defining "alternative economic uses" to include uses such as a game farm, fish hatchery, wildlife sanctuary, plant nursery or other recreational, agricultural or aboricultural uses) with DEM Rule 7.06(b) (defining "valuable recreational environment" to include a relatively natural or undeveloped area capable of supporting recreation by the general public including hunting, fishing, trapping, hiking, bird watching and nature photography). In the instant matter, there has not been a denial of all "productive or economically viable use of [the] land" sufficient to invoke the per se rule of Lucas, nor has "all reasonable or beneficial use . . . been rendered an impossibility" underAnnicelli.
The fact that a party fails to succeed under Lucas will not preclude recovery. Where the government regulation does not effect a total loss, the analysis enunciated in Penn CentralTrans. v. New York City, 438 U.S. 104 (1978), is applicable. InPenn Central, the Court noted that while takings analysis is often ad hoc in nature, several factors are of primary consideration, including: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with the claimant's reasonable investment-backed expectations; and (3) the character of the government action. Id. at 124.
Appellants first contend that "the economic impact that the regulation will have . . . is astounding." Appellants' Brief at 11. This claim, however, is once again premised on the notion that the property has lost all economic value. It is well settled that "a property owner does not have a vested property right in maximizing the value of his property." Annicelli, 463 A.2d at 140. Numerous cases have rejected the takings argument simply because the property cannot be put to its most profitable use.See Agins, 447 U.S. at 262 (no taking where zoning ordinance permitted different, albeit more limited, use of property);Milardo v. Coastal Resources Management Council, 434 A.2d 266, 268 (R.I. 1981) (plaintiff's claim that property had no value was "sweeping conclusion" that failed to take into account other possible uses); Golden Gate Corp. v. Town of Narragansett,116 R.I. 552, 566, 359 A.2d 321, 328 (1976) (regulation not confiscatory merely because the property may not be put to its most profitable use).
The ownership of property creates a "bundle of rights" including the right to possession, to exclude others, to use and enjoy, and to dispose of the property. Loretto v. TeleprompterManhattan CATV Corp., 458 U.S. 419, 435 (1982). The economic impact of the regulatory scheme is determined by viewing its effect on that bundle. None of the fundamental attributes of ownership represented by that bundle have been extinguished there. The appellants retain each of their fundamental rights in the property and thus the economic impact of the government action cannot be said to be "astounding." See EJ Inc. v.Redevelopment Authority of Woonsocket, 122 R.I. 288, 291,405 A.2d 1187, 1189 (1979) (right to compensation for taking confined to case involving deprivation of one or more of the fundamental property rights); see also Orion Corp. v. State, 747 P.2d 1062, 1085 (Wash. 1987) (even if state denied landowner right to make present, reasonably profitable use of property, other uses of property remained intact so as to minimalize significance of economic impact) cert. denied 486 U.S. 1022 (1988).
Appellants next claim that their investment-backed expectations have been "denied" [sic] because the appellants "purchased the property with the expectation of building a single family dwelling." Appellant's Brief at 11. Appellants conclude that because DEM has denied their application to build such a dwelling, their expectations have been "confiscated." Id.
Resolution of this issue involves a dual inquiry: first, the threshold question of whether investment-backed expectations existed and then an analysis concerning whether those expectations have been extinguished. Appellants have not hurdled the threshold here.
Investment-backed expectations must be "reasonable." See PennCentral, 438 U.S. at 125. The court in Loveladies Harbor, Inc. v.U.S., 28 F.3d 1171 (Fed. Cir. 1994) discussed the particular relevance of this requirement where a party purchases land subject to a regulatory scheme. Considering the issue of federal restraint on wetlands development, the court noted that
 [i]n legal terms, the owner who bought with knowledge of the restraint could be said to have no reliance interest, or to have assumed the risk of any economic loss. In economic terms, it could be said that the market had already discounted for the restraint, so that a purchaser could not show a loss in his investment attributable to it.
The Loveladies court concluded that the plaintiff's expectations were reasonable because they had purchased the property before the regulatory programs at issue came into effect. Id. at 1179, 1183. The appellants cannot make a similar claim here and as a result their claims on this issue must fail.See Ciampetti v. U.S., 22 Ct. Cl. 310, 321 (1991) (plaintiff's expectations not reasonable where he had knowledge of difficulty involved in obtaining necessary wetlands permits); cf. 767 ThirdAve Associates v. U.S., 48 F.3d 1575, 1581 (Fed. Cir. 1995) (lessor cannot claim reasonable investment-backed expectations where it was on notice that government could and likely would act to freeze tenant's assets).[3]
Furthermore, with respect to their possessing such investment-backed expectations, appellants' reliance on Lucas andAnnicelli is misplaced. In Lucas, the state of South Carolina enacted legislation two years after the plaintiff purchased the property in question which effectively barred him from constructing habitable structures on his land. 112 S.Ct. at 2889. The plaintiff in Annicelli purchased the property on May 8, 1975, only to have the town designate the property as a "High Flood Danger" zone there weeks later. 463 A.2d at 135.
Here, appellants purchased the property in question in 1984, well after the DEM was empowered to review applications requesting permission to alter freshwater wetlands. See J.M.Mills, 116 R.I. at 57, 352 A.2d at 663 (Freshwater Wetlands Act passed in 1971). The appellants cannot claim the status of unsuspecting landowners blindsided with confiscatory government action. See Clegg, Reclaiming the Text of the Takings Clause, 46 S.C.L. Rev. 531, 533 (1995) ("if a statute had been enacted prior to acquisition . . . [the] owner cannot claim that [a] right was "taken" from him, since he never had it").
Concerning the character of the governmental action, appellants argue that the granting of the Geddes' application shows that "[t]he government action is arbitrary, capricious and violative of the United States and Rhode Island Constitutions." Appellants' Brief at 11. The proper inquiry under this prong is whether "the alleged regulatory imposition [is] one which seriously interferes with a property right, but which is not otherwise authorized by constitutional or common law." CienegaGardens, 33 Ct. Cl. at 218. Actions which can be characterized as a valid exercise of police power are so authorized and are distinguished from takings requiring compensation under the Fifth Amendment. Id. The authority to regulate the use of fresh water wetlands is an exercise of state police power. See G.L. § 2-1-19;J.M. Mills, 122 R.I. at 65-66, 352 A.2d at 667; see also Babcock,Has the United States Supreme Court Finally Drained the Swamp ofTakings Jurisprudence? The Impact of Lucas on Wetlands and CostalBarrier Beaches, 19 Harv. Envtl. L. Rev. 1, 24-25 (1995) (noting the need for protection of wetlands under police power).
Finally, appellants seek a de novo review of the DEM's findings under G.L. § 2-1-21(b). Section 2-1-21(b) allows a landowner to petition the superior court to have the state acquire the land for which the wetland permit was denied. Appellants appear to recognize that review under § 2-1-21(b) is an alternative to review under § 2-1-21(a). Nevertheless, they have attached an appraisal to their brief, apparently seeking to provide the court with a dollar figure for compensation under §2-1-21(b).[4]
 J.M. Mills stands as the beginning and the end of the Rhode Island Supreme Court's commentary on the proper application of §2-1-21(b). In that case, the court noted the ambiguity inherent in the statute. See J.M. Mills, 116 R.I. at 71, 352 A.2d at 670. Despite this fact, the court interpreted the section to provide a remedy alternative to § 2-1-21 (a), to be invoked "only where an appeal under § 2-1-21 (a) proves unavailing or where the landowner allows the appeals period to run, thereby foregoing his opportunity to raise issues of a constitutional dimension." Id.
at 73, 352 A.2d at 671.
Under J.M. Mills, it is clear that appellants may not to seek simultaneous relief under both subsections (a) and (b). As a result their final argument on the takings issue is also without merit.
Equal Protection
The appellants claim that the decision of the DEM denies them equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, § 2 of the Rhode Island Constitution. The basic thrust of appellants' argument appears to be that equal protection was denied when landowners similarly situated were treated differently. Specifically, appellants claim that the DEM's granting of the Geddes' application constitutes the alleged constitutional violation because of the substantial similarity between the respective properties.
The proper inquiry concerning equal protection claims is whether similarly situated parties are being treated differently. The threshold requirement, therefore, is that the parties be "similarly situated." Appellants attempt to hurdle this requirement with conclusory allegations. See Appellants' Brief at 27-28. Building on this premise, appellants then cite several cases for the basic concepts of equal protection and then conclude that such protection has been denied in this case.
The appellants have not stated a valid equal protection claim. They have cited no authority, nor has the court located any, recognizing the existence of such a claim in similar circumstances. Cases rejecting the claim, however, are plentiful.See, Strafach v. Durfee, 635 A.2d 277, 282 (R.I. 1993) (rejecting comparison to neighboring property); Birchwood Realty, Inc. v.Grant, 627 A.2d 827, 835 (R.I. 1993) (rejecting equal protection claim where differences between facilities existed); see alsoFraenza v. Keeney, 655 A.2d 1113, 1120 (Conn. Super. 1994) (distinctions existed between neighboring marinas so as to preclude equal protection claim); Bushey v. Town of China,645 A.2d 615, 618 (Me. 1994) (differences in use to which adjoining kennel owners put land defeated equal protection claim).
Recognition of the multitude of distinctions that may exist between sites is implicit in the number of factors that are to be taken into account by the DEM when reviewing applications See DEM Rules 5.03, 7.02-7.06. Furthermore, the legislative grant of power to the DEM to make case-by-case determinations illustrates the general awareness of the multitude of factual distinctions that may exist. J.M. Mills, Inc. v. Murphy, 116 R.I. 54, 63-64,352 A.2d 661, 666 (1976). These distinctions defeat the appellants' claim that they and the Geddes are similarly situated.[5] Accordingly, the decision of the DEM is not violative of equal protection.
Due Process
Appellants also claim to have been denied due process under the respective constitutional provisions cited above. A review of the record indicates that procedural and substantive due process rights of the appellants have not been violated. Procedural due process consists of the right to notice and an opportunity to be heard. See Vito v. DEM, 589 A.2d 809, 813-14 (R.I. 1991); seealso Tribe, American Constitutional Law, § 10-7 at 664 (2nd ed. 1988) (traditional elements of procedural due process are safeguards of notice and hearing). Those protections were provided in this matter. See J.M. Mills, 116 R.I. at 66-67, 352 A.2d at 668 (concluding that Fresh Water Wetlands Act does not deny procedural due process).
As concerns a claim of denial of substantive due process, appellants have not alleged either membership in a protected class nor government action that has denied them a fundamental right so as to trigger the application of a strict scrutiny form of analysis. As a result, the DEM's action must only be rationally related to a legitimate government interest. SeeMedical Malpractice Underwriting Ass'n v. Paradis, 756 F. Supp. 669, 675 (D.R.I. 1991) (if regulation does not impact fundamental right, substantive due process satisfied if regulation rationally related to legitimate state interest). As the court has already concluded that the action of the DEM was not arbitrary or capricious, that requirement has been met and therefore appellants' claim is without merit.
Constitutionality of Rule 7.06(b)
Appellant's final argument rests on the claimed unconstitutionality of Rule 7.06(b)[6]. The contention is predicated on the notion that the rule "allows as a presumption that private property may be used for public recreation." Appellants' Brief at 31. Appellants then build on that premise, noting the fundamental right of a property owner to exclude others as well as the statutory requirement that a property owner give permission prior to the land being deemed donated for public use.
There is simply no evidence in the record that the DEM has required the Emonds to open their land to the public.[7] The fact that permission to alter the wetlands has been denied does not automatically mean that the public may now use the property. The evidence of record concerned the possible recreational uses which the land may support. The key word is "may," rather than "must."
The cases cited by appellants, including Nollan v. CaliforniaCoastal Com'n, 483 U.S. 825 (1987) and Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077 (R.I. 1988) are inapposite. Both cases involved the taking of property to support a public right-of-way. Accordingly, appellants' claim that the agency decision was based in part on an unconstitutional regulation is without merit.
Conclusion
Upon review of the entire record in this matter, the court finds that the decision of the DEM is supported by substantial evidence and was not made upon unlawful procedure or in violation of constitutional or statutory provisions, or other error of law. Substantial rights of the appellants have not been prejudiced. Accordingly, the December 26, 1990 decision of the DEM is affirmed. Counsel should prepare the appropriate order for entry.
[1] The DEM Regulations at issue here have been amended since this controversy began. The regulations in effect prior to the amendment control this controversy. See DEM Rule 18.01, I CRIR 6 12 100 003-67. Those regulations are cited herein as DEM Rule _.
[2] The Environmental Scientific court contrasted the situation where firsthand evidence is not at issue, including those situations where all evidence is presented in written form. Id.
at 206-07. In such instances, the reviewing court may review the hearing judge's findings de novo. Id. at 207.
[3] Even if appellant's investment-backed expectations were found to be reasonable, the mere fact that they have been denied the opportunity to construct one particular type of dwelling would not mean that those expectations have been extinguished.See Baytree of Inverray Realty v. Launderhill, 873 F.2d 1407, 1410 (11th Cir. 1989) (investment-backed expectations not eradicated simply because owner not able to develop land as originally intended); see also Brecciaroli v. ConnecticutCommissioner of Environmental Protection, 362 A.2d 948, 952-53 (Conn. 1975) (denial of landowner's application to fill specific portion of wetland not a taking where party had opportunity to make subsequent application to fill smaller area).
[4] Even assuming arguendo that § 2-1-21 (b) were applicable, the appraisal would be of little use. Recovery under § 2-1-21 (b) is not measured by the fair market value of the property, but rather by the value of the wetland "as a wetland." J.M. Mills,
116 R.I. at 79, 352 A.2d at 674 (Kelleher, J., concurring in part and dissenting in part). The landowner waives his right to just compensation (represented by fair market value) by invoking § 2-121(b). Id.
[5] The court also notes the settled axiom that land is considered unique and distinctive. See, e.g., Jolicoeur FurnitureCo. v. Baldelli, 653 A.2d 740, 749 (R.I. 1995); Griffin v.Zapata, 570 A.2d 659, 661-62 (1990); Politelli v. Gianfrancesco,98 R.I. 252, 255, 201 A.2d 129, 131 (1964).
[6] The fact that the regulation has since been amended does not moot this issue. Cf. Ashness v. Tomasetti, 643 A.2d 802, 808 (R.I. 1994) (rejecting mootness claim under similar circumstances involving challenge to statute).
[7] In fact, the Emonds' own expert testified that permission from the owner would still be necessary to access the subject property. Tr. at 203.