DECISION
This is an appeal from a decision of the Rhode Island Department of Business Regulation ("Department" or "Appellee"), finding that the actions of Louis Annarummo (Appellant) constituted a hazard to the public in violation of R.I.G.L. § 27-2.3-12(8),[1] and the assessing of a fine of $1,000.00. Jurisdiction in this Court is pursuant to R.I.G.L. § 42-35-15 et seq.
 FACTS
The Court adopts as true and unchallenged the findings of facts as established by the Department, and set forth in its decision. Appellant herein is an insurance provider duly licensed pursuant to the Rhode Island General Laws. Mr. Annarummo is also an officer of the Annarummo Insurance Agency and formerly employed two other licensed producers of insurance who have since left his employ.
Mr. Annarummo maintained the original continuing education certificates of the two employees during the period when the two were employed by the Appellant's insurance agency. When two employee producers left the agency, Mr. Annarumo telephoned the Department to determine who should retain the certificates. In May 1999, the Department wrote to Mr. Annarummo asking that he provide the original continuing education certificates for the two employees. The Appellant refused to comply with that request. On July 1, 1999, a Notice of Intent to suspend the Appellant's license and impose an administrative penalty was issued. On July 17, 1999, the Department again wrote to Mr. Annarummo asking that he provide the employees with the original certificates. The Appellant again refused to comply with that request. On the day that the hearing officer ruled that the original continuing education certificates were the property of the employees, Mr. Annarummo consented to the return of the certificates to the Employees.
 TRAVEL
As indicated on July 1, 1999, the Department filed a Notice of Intent. On July 20, 1999, Mr. Annarummo requested a hearing. In July of 2000, the Department's hearing officer ruled that the certificates were the property of the employees, and on the same day the certificates were delivered to the employees with the consent of the Department and Mr. Annarummo. On January 12, 2000 (apparently as the result of a departmental summary judgment motion proceeding), the hearing officer concluded that the certificates were the property of the individual licensees, but the case would proceed to hearing to determine if Mr. Annarummo's license was at risk. Still no hearing was held on the case in chief for well over a year. A hearing was held before the Department on November 14, 2001. The decision of the Department imposing an administrative fine against Mr. Annarummo for $1,000.00 was issued on June 19, 2002.[2] Mr. Annarummo filed an appeal to this Court.
The hearing officer recited the testimony propounded at the hearing. Mr. Annarummo testified that he contacted an attorney in the legal division of the Department in March of 1999 indicating that two employees had left his office and he made an inquiry as to whether or not he could continue to maintain the original certificates for the employees. Mr. Annarummo testified that he was told by the Department's legal attorney that she knew of no legal statute, rule or anything else requiring him to turn over the certificates. The Department's attorney testified on rebuttal that she remembered the telephone call but did not recall making such a response. Instead, she testified that when the Department receives a request for a legal opinion, the policy is to ask that the request be made in writing.[3]
The Department's witness for its case in chief was Alfonso Mastrostefano, the Department's Superintendent of Insurance. Mr. Mastrostefano testified that he believed failing to comply with an order of the Department constitutes a "hazard to the public."
He also testified that the letters sent by the Department to Mr. Annarummo requesting the certificates were not departmental orders. Mr. Mastrostefano testified "that it would also be a hazard to deny as a general business practice someone something that they own." In Mastrostefano's opinion, "the act of withholding continuing education certificates from [employees] constitutes a hazard to the public." (Department Decision at 9.) This appears to be the only implication in the record relative to the Department's "hazard to the public" required by the statute.[4]
After Mr. Mastrostefano's testimony, thereby concluding the Department's case, Mr. Annarummo requested that the case be dismissed as a matter of law. The hearing officer reserved judgment on this issue, and appears never to have returned to the motion.
 STANDARD OF REVIEW
Aggrieved parties may file an appeal of a decision of the Department of Business Regulation to this Court pursuant to R.I.G.L. § 42-35-15, which provides in pertinent part:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
 (3) made upon unlawful procedure;
 (4) affected by other error of law;
 (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.
This Court should not substitute its judgment for that of the agency under review as to the credibility of witnesses or the weight of the evidence concerning issues of fact. Costa v. Registrar of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988). Additionally, this Court generally gives deference to any agency's interpretation of its own regulations and governing statutes. Bureau of Alcohol, Tobacco Firearms v. Federal Labor Relations Authority, 464 U.S. 89, 97, 78 L.Ed.2d 195, 203, 104 S.Ct. 439, 445 (1983); Citizens Savings Bank v.Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1983). The Court must confine its review to the record of the administrative hearing to determine if any "legally competent evidence" exists to support the agency's decision.Lischio v. Zoning Board of Review of North Kingstown, 818 A.2d 685, 690, footnote 5 (R.I., 2003) (defining legally competent evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance"). Thus, the Superior Court will uphold the agency's findings if they are supported by competent evidence. R.I. PublicTelecommunications Authority, et al. v. R.I. Labor Relations Bd., etal., 650 A.2d 479, 485 (R.I. 1994). Nevertheless, the court may vacate a decision of an agency if it is "clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa, 543 A.2d at 1309.
 DISCUSSION
Mr. Annarummo appears to have been caught in the cross-hairs of the state department. His uncontroverted testimony was that he received contradictory advice from the state on how to proceed. He was then brought through a department hearing, accused of defying departmental orders, causing a "hazard to the public" and imposed with a fine. This discipline may be detrimental to the future of his license. This on-going proceeding has endured for some four years. These issues should be taken in turn.
A. Hazard to the Public
Mr. Annarummo has been found to have violated only one statute. This statute states:
 (a) Any license issued under this chapter may be suspended, revoked, or nonrenewed, and any application for the license may be denied, if the department of business regulation finds that the licensee or applicant has:
 * * * (8) In the conduct of providing insurance while holding an insurance producer license, used fraudulent, coercive, or dishonest practice or has been shown to be incompetent, untrustworthy, financial irresponsible, or a hazard to the public. R.I.G.L. § 27-2.3-12(a).
The Department found Mr. Annarummo's actions to constitute a hazard to the public. It did not find him to be fraudulent or dishonest in any way.
The Department's lengthy decision only briefly describes the hazard, or danger to the public. At page 25, the decision concludes that the continuing education requirements are one "integral part of the system" designed to protect the public by ensuring the competence of producers. If producers are audited, and if they could not produce their certificates, they could face administrative action. This assumes, of course, that producers would have no other records, could not obtain duplicate records, that their original employers are uncooperative (though they are licensed as well) and that no other evidence would be available or acceptable. It is noteworthy that in the case at bar, the licenses of the former employees were never at risk. The Department offered no evidence of confusion concerning the employees' licenses. More importantly, the Department never explained the threat to the public at large. Mr. Mastrostefano appears to have been significantly challenged when he was asked to describe the hazards to the public.[5]
Just as confusing are the Department's regulations and the procedure it followed thereunder. The Department cites no statute, rule, or regulation requiring the agency owner to turn over the certificates. This confusion was the cause of Mr. Annarummo's original query to the Department.
In construing statutes, the court first looks to the language of the statute itself. If clear and unambiguous, the court must interpret it literally, giving the words of the statute their plain and ordinary meaning. Stebbins. v. Wells, 818 A.2d 711, 715, (2003). Henderson v.Henderson, 818 A.2d 669, 673 (2003).
For an insurance producer, the license is of critical importance. It is his or her lifeblood, the vehicle through which insurance is sold and one's employment is maintained. Clearly, the General Assembly was cognizant of the significance of these licenses and required a substantial showing before the state could suspend a license, or impose an administrative fine. R.I.G.L. § 27-2.3-12. For example, the license is at risk if the state proves that the producer intentionally converted monies belonging to others (subsection (4)), forged another's name on a policy application (subsection (10)), cheated on a license examination (subsection (11)), violated any law relating to the production of insurance (subsection (2)), misrepresented a policy (subsection (5)), or was convicted of a felony (subsection (6)). In arguing that Mr. Annarummo's actions constitute a hazard to the public, the Department is proceeding under subsection (8), one of the more subjective portions of the statute.
Subsection (8) requires the conduct of the producer (i.e. the specific event actions complained of) be shown to constitute a hazard to the public. There is no evidence of record to support a finding that Mr. Annarummo's actions posed a hazard to the public. Clearly, no insurer or insured was duped in any way. There is no doubt that Mr. Annarummo and his former employees had sufficient education for their licenses. No licenses were at risk. No insurance was at risk. Hence, any danger to the public is mere conjecture and as such is insufficient to form the basis for license discipline.
B. In the conduct of providing insurance.
Subsection (8) also requires that the licensee's wrongful actions be shown to have occurred "in the conduct of providing insurance." Mr. Annarummo's actions, the withholding of 7 the certificates, did not occur in the conduct of providing insurance. In withholding the certificates he was not soliciting, negotiating, effecting, procuring, delivering, renewing, binding or advising any customer (insured or insurer) about coverage. See R.I.G.L. § 27-2.3-2(5), (now repealed). As such, he was not acting as an insurance producer, but as an employer, concerned about the conduct of his employees, and whether he may be obligated to substantiate that they received the requisite education. Obviously, he maintained his certificates as well, which were important for his own license. Mr. Annarummo's uncontroverted testimony is that he kept the documents as they were part of his personnel files for his employees. He paid for the courses and he telephoned the Department's legal division and was informed that there was no requirement for him to turn the certificates over[6]. He considered the contradictory letters he received thereafter as "legal mumbo jumbo between parties and I was waiting for clarification because I felt that clarification had to be given because of what I was told on the telephone by Ms. Warren." (Department Decision at 11-13.)
 CONCLUSION
For the foregoing reasons, this Court finds that the decision of the Department was not supported by the reliable, probative and substantial evidence of the record. Accordingly, the June 26, 2002 Decision[7] of the Rhode Island Department of Business Regulation must be and is hereby reversed. This Court rejects the decision of the hearing officer, vacates the award of administrative fines and affirms the within appeal therefrom.
Counsel shall submit the appropriate judgment for entry.
[1] This statute was revamped by the General Assembly after the Notice of Intent, but before the administrative hearing. P.L. 2001, Chapter 14, R.I.G.L. Chapter 27-2.3, cited throughout this decision, has been replaced with R.I.G.L. 27-2.4.
[2] Mr. Annarummo was charged with three separate violations. The hearing officer was appointed to determine three separate issues: (1) whether Mr. Annarummo violated any law relating to the production of insurance in violation of R.I.G.L. § 27-2.3-12(2), (2) whether Mr. Annarummo failed to comply with an order of the Department in violation of R.I.G.L. § 27-2.3-12(2) and (3) whether Mr. Annarummo's actions constituted a "hazard to the public" in violation of R.I.G.L. §27-2.3-12(8). The Department answered the first two issues in the negative but found that Mr. Annarummo's actions did "constitute a hazard to the public" in violation of the General Laws and imposed an administrative fine of $1,000.00. Accordingly, this issue is the subject of the appeal of the pending controversy.
[3] Query as to whether such a legal inquiry would travel at the same slow speed as the Department's hearing process. Mr. Annarummo further testified that he was confused with the letters received from the Department as they were contradictory to the information he had received in the telephone call. . . . (Department Decision at 11-13.) Mr. Annarummo later testified that he refused to turn over the certificates after receiving the Department's letters because it seemed contradictory and "I was waiting for clarification because I felt that clarification had to be given because of what I was told on the telephone." (Department Decision at 13.)
[4] Mr. Mastrostefano also testified that he knew of no hardship to the respective employees as a result of Mr. Annarummo's withholding of the certificates, the original certificates were never requested from the employees. (Department Decision at 10.)
[5] The revised statute removes the obscure "hazard to the public" language. R.I.G.L. § 27-2.4-14(a)(8).
[6] The Department refuted Mr. Annarummo's inference that he was told he could retain the certificates. (Department Decision at 14.) 
[7] Although the issue of timeliness was never raised, it is discomforting that the disciplinary hearing, threatening a license, took so long to wind its way through the Department. While the notice of intent was issued in May of 1999, no hearing was conducted until November of 2001. The Department's Decision was not issued until late June of 2002. In reviewing whether court-imposed deadlines were an appropriate remedy for delays in departmental application hearings, our Supreme Court stated:
 "Moreover, the trial justice's finding is in accord with the general rule of administrative procedure under which, absent a specific time frame, public hearings must be held within a reasonable time. See Wright v. Califano, 587 F.2d 345, 351 (7th Cir. 1978); Caswell v. Califano, 583 F.2d 9, 15 (1st Cir. 1978); see e.g., 73A Corpus Juris Secundum, § 137 at 79 n. 42 (1983).
 * * * After a review of the record, we are persuaded that the trial justice was fully justified and did not misconceive or overlook relevant evidence in concluding that DEM deprived denied applicants of due process by failing to schedule freshwater-wetlands public hearings within a reasonable time upon their requests for one.
 The resolution of whether an agency's administrative procedures comports with due process requires a balance of the relevant private and governmental interests. John J. Orr Sons, Inc. v. Waite, 479 A.2d 721, 723 (R.I. 1984) (citing Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976)). In the matter before us, we must balance the denied applicants' private interest in developing their property against DEM's governmental interest in protecting Rhode Island's freshwater wetlands. We believe that in the circumstances of this case the private interest outweighs the countervailing governmental interest. The most significant factor in this balance weighing in favor of the private interest is DEM's administrative delay in scheduling and conducting the public hearings. The evidence presented demonstrates that denied applicants encountered significant administrative delay in waiting for freshwater-wetlands public hearings, many in excess of one year. Delay in administrative proceedings is an important factor in assessing the sufficiency of an agency's process. See Wright v. Califano, 587 F.2d at 354. We find that the administrative delay suffered by denied applicants is unreasonable and denies them an opportunity to be heard at a meaningful time.
 We recognize that DEM has a legitimate governmental interest in exercising its discretion to allocate its resources to protect Rhode Island's freshwater wetlands. However, this discretion is not absolute when the conflicting rights of members of the public are involved. We find the reasoning of the First Circuit in Caswell very compelling:
 "`the [Director] has substantial discretion in the scheduling of hearings and that courts must normally defer to agency judgment to allow the evolution of procedures as needs arise. . . . Yet equally clear is the [Director's] statutory [and due process] duty to provide a hearing at a meaningful and reasonable time. . . . His discretion would not encompass a system which routinely. . .schedules hearings at unreasonably distant times.'" (Emphasis added.) 583 F.2d at 15.
 Vito v. Department of Environmental Management, 589 A.2d 809, 813-814 (1991).
Simply put, such an extensive delay when one's license is at risk may be unfair.